THREE K. C., a corporation, and Ronald Bergeron, d/b/a the Bittersweet, Appellants,

v.

David E. RICHTER, County Attorney of Pottawattamie County, Iowa, Appellee.

TWO–R, INC., a corporation, d/b/a the Lusty Lady, Appellant,

v.

David E. RICHTER, County Attorney of Pottawattamie County, Iowa, Appellee.

No. 61742.

Supreme Court of Iowa.

May 30, 1979.

James A. Pratt and Robert C. Heithoff of Heithoff, Pratt & Heithoff, Council Bluffs, for appellants.

David E. Richter, Pottawattamie County Atty., pro se.

UHLENHOPP, Justice.

This appeal involves due process and equal protection attacks on a statute prohibiting nudity in establishments where liquor or beer is sold. The legislature provided in section 728.5, The Code 1979:

A holder of a liquor license or beer permit or any owner, manager, or person who exercises direct control over any licensed premises defined in section 123.3, subsection 31 shall be guilty of a serious misdemeanor under any of the following circumstances:

1. If such person allow or permit the actual or simulated public performance of any sex act upon or in such licensed premises.

2. If such person allow or permit the exposure of the genitals or buttocks or female breast of any person who acts as a waiter or waitress.

3. If such person allow or permit the exposure of the genitals or female breast nipple of any person who acts as an entertainer, whether or not the owner of the licensed premises in which the activity is performed employs or pays any compensation to such person to perform such activity.

4. If such person allow or permit any person to remain in or upon the licensed premises who exposes to public view his or her genitals, pubic hair, or anus.

5. If such person allow or permit the displaying of moving pictures, films, or pictures depicting any sex act or the display of the pubic hair, anus, or genitals upon or in such licensed premises.

6. If such person advertises that any activity prohibited by this section is allowed or permitted in such licensed premises.

Provided that the provisions of this section shall not apply to a theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances and any of the circumstances contained in this section were permitted or allowed as part of such art exhibits or performances.

Plaintiff corporations and Ronald Bergeron come within the prohibition of this statute with respect to their Bittersweet and Lusty Lady lounges in Council Bluffs, Iowa. They hold liquor licenses and beer permits for those premises, and prior to the instant proceedings they allowed exposure of the genitals and the female breast nipples by entertainers performing there. Some of these entertainers were paid professionals and others were amateurs competing for cash prizes on the basis of patrons' "applause." The Bittersweet also had feature performances.

The combination of nudity and alcohol made the lounges very profitable. Before section 728.5 was in effect, each lounge produced about $1000 per day; after the section went into effect on January 1, 1978, each lounge dropped to about $200 per day

until plaintiffs obtained temporary injunctions prohibiting enforcement of the section. Under the record plaintiffs' claim is indisputable that live exhibitions of human female genitalia and mammae do much to stimulate customer attendance and alcoholic beverage sales. Plaintiff Bergeron testified:

Q. Do you feel, based upon the difference in revenue in January with the observing the law and before the injunction was issued, do you have an opinion as to the effect on your future business if this law is valid and enforced? A. It would have the opportunity of ruining the business.

On cross-examination Bergeron testified:

Q. Well, how do you account for the big impact if your business has gone downhill like you testified? The only difference being, as I recall, was that the nipples and the genitals had to be covered. What other reasons do you attribute this tremendous business loss to, for the few days in January that you were covered up? A. Well, you give them a total package. You're taking part of the total entertainment package out.

Q. But, according to your figures, Mr. Bergeron, it must be quite a party package, the nipples and genitals are a considerable part of your package of entertainment? A. Yes, they are.

Also:

Q. In the Lusty Lady, where there's not a feature show, you're basically selling nudeness and alcohol; right? A. Yes. And dancing. Go-go dancing with nudeness and alcohol.

Plaintiff Bergeron's conception of lewdness includes nudes squatting or bending forward with their backs to the patrons so as to display fully the vulva and anus. He testified that he warns and then fires entertainers who persist in such conduct, or who engage in prostitution or in use of dope. For example:

Well, there's been incidents where they have got on stage, and they were going to get vulgar, or did, and we fired them on the spot. Gave them a warning that we don't allow this. They did it twice, we just fired them right then and there and told them we didn't want their type of entertainment in our club. So forth, like this. This happened on many more than one occasion.

In addition, plaintiffs "bounce" over-aroused patrons. They maintain a bouncer, an individual of impressive physical prowess. ("Q. How big is Clyde? A. Oh, he's about six one or two, weighs about 280, 300 pounds.") Evidently plaintiffs actually try to confine their operation to the display of nudity and the sale of alcohol—if such confinement is attainable in an enterprise dealing in that somewhat lethal mixture. Thus the night before the district court trial three men had to be ejected from one of the lounges, after which the men got into a fight and two of them "beat up" the third one. Again, an entertainer testified:

Q. Do you ever have a night, though, that somebody does try to hustle you? A. Oh, that's every night.

Q. Every night? How many times a night would you guess? A. Fifteen, twenty.

Another entertainer testified:

Q. Did you take any combs from the customer and comb your pubic hair with them? A. Do I have to answer that question?

The Court: Yes, you do, Ma'am.

Mr. Richter (county attorney): Q. Did you?

The witness: A. Yes.

Plaintiffs pay the professional entertainers varying hourly wages depending on the entertainers' abilities, personalities, and "endowments." Essentially the entertainers, professional and amateur, dance to music, move their bodies and hips, and disrobe.

Plaintiffs brought these actions for declaratory judgments holding that section 728.5 is invalid and for injunctions against its enforcement. In the district court they asserted several grounds for relief. After trial on the merits, the court held against them on all grounds, dissolved the temporary injunctions, and denied permanent injunctions. Plaintiffs appealed.

Plaintiffs confine their appeal to only two grounds, evidently endeavoring to avoid other issues on which we decided in favor of constitutionality in *Wright v. Town of Huxley*, 249 N.W.2d 672 (Iowa 1977).

I. *Due Process.* Both the United States Constitution and the Iowa Constitution guarantee that no person shall be deprived of "life, liberty, or property, without due process of law." U.S.Const. amend. XIV, § 1; Iowa Const. art. I, § 9. Under plaintiffs' first ground the question is whether section 728.5 deprives plaintiffs of liberty or property without due process. The section unquestionably deprives them of property— substantial profits—and so the issue is whether the deprivation is without due process of law. The critical point on this issue is that the section does not ban nudity itself; it bans nudity only in connection with dispensation of alcohol.

■ Traditionally, control of alcoholic beverages, including the manner and circumstances under which they may be dispensed, if at all, has been within the police power of the states. *Crane v. Campbell*, 245 U.S. 304, 307, 38 S.Ct. 98, 99, 62 L.Ed. 304, 309 (1917). There the United States Supreme Court stated:

It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a State has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment. (Citations omitted.)

As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. (Citations omitted.)

*See also* 45 *Am.Jur.2d Intoxicating Liquors* § 24, at 503 (1969) ("A state, in the exercise of its undoubted power to protect its people against the evils incident to traffic in and the use of intoxicants, may exercise large discretion as to the means employed."); 48 *C.J.S. Intoxicating Liquors* § 33, at 164 (1947) ("Under their inherent police power, the several states have the right to prohibit, regulate, or restrain the use, manufacture, and sale of intoxicants  .   .   .").

The Twenty-first Amendment to the United States Constitution states in section 2:

The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

Regarding that section, the United States Supreme Court stated in *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342, 349–50 (1972), *rehearing denied*, 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973):

While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals.

■ The Court has held however that the Twenty-first Amendment does not abolish the guarantees of the Bill of Rights; and the states' general police power is of course subject to those guarantees. *Craig v. Boren*, 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397, 412 (1976), *rehearing denied*, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977). In *Craig* the Court quoted P. Brest, *Processes of Constitutional Decisionmaking, Cases and Materials* 258 (1975): " 'Neither the text nor the history of the Twenty-first Amendment suggest that it qualifies individual rights protected by the Bill of Rights and the Fourteenth Amendment where the sale or use of liquor is concerned.' " We conclude therefore that under the police power the states may regulate or even forbid the traffic in alcoholic beverages but in doing so must comport with substantive and procedural due process.

The leading case on nudity and alcohol is *California v. LaRue.* The California Department of Alcoholic Beverage Control promulgated regulations prohibiting specified conduct on liquor-licensed premises including the "actual or simulated 'displaying of the pubic hair, anus, vulva or genitals.'" 409 U.S. at 112, 93 S.Ct. at 394, 34 L.Ed.2d at 348. A three-judge federal district court found that the regulations unconstitutionally abridged freedom of expression guaranteed under the First and Fourteenth Amendments. The United States Supreme Court reversed. It initially found that the Twenty-first Amendment does not abrogate constitutional guarantees, but in the nudity-alcohol context of the case the Court stated:

> Appellees insist that the same results could have been accomplished by requiring that patrons already well on the way to intoxication be excluded from the licensed premises. But wide latitude as to choice of means to accomplish a permissible end must be accorded to the state agency that is itself the repository of the State's power under the Twenty-first Amendment. *Seagram & Sons v. Hostetter, supra,* 384 U.S. [35,] at 48, 86 S.Ct. [1254,] at 1262, [16 L.Ed.2d 336 at 346] [1966]. Nothing in the record before us or in common experience compels the conclusion that either self-discipline on the part of the customer or self-regulation on the part of the bartender could have been relied upon by the Department to secure compliance with such an alternative plan of regulation. The Department's choice of a prophylactic solution instead of one that would have required its own personnel to judge individual instances of inebriation cannot, therefore, be deemed an unreasonable one under the holdings of our prior cases. (Citation omitted.)

Also:

> The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state

regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution. 409 U.S. at 116, 118–19, 93 S.Ct. at 396, 397, 34 L.Ed.2d at 350–51, 352.

While the district court's decision in *La-Rue* was based on freedom of expression, the language of the United States Supreme Court is broad enough to rebut a due process attack as well. The Court concludes its opinion by saying that the regulations do not on their face violate "the Federal Constitution."

The Court commented on *LaRue* in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648, 660 (1975). *Doran* involved topless dancing in premises where liquor was sold as well as in many other establishments. After remarking that nude dancing may be "entitled to First and Fourteenth Amendment protection under some circumstances," the Court stated:

> In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program.

Plaintiffs cite decisions which they say uphold various constitutional guarantees in the liquor context notwithstanding the states' police power. One is *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336, *rehearing denied,* 384 U.S. 967, 86 S.Ct. 1583, 16 L.Ed.2d 679 (1966). That case involved due process and equal protection challenges in an economic setting: pricing of liquor. The Court found the statute facially constitutional.

Another decision is *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). There the Court held that procedural due process requires notice and hearing before posting a notice prohibiting the sale of liquor to an individual claimed to be an excessive drinker.

A further decision plaintiffs cite involved an equal protection challenge based on refusal to serve a black guest in an Elk Lodge which held a state-issued liquor license. A state regulation required the lodge to abide by the Elk's national bylaws which, as amended, limited admission to male Caucasians. The Court held that the guest was entitled to an injunction prohibiting enforcement of the state regulation to the extent it required the lodge to abide by the discriminatory national bylaw. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

Still another decision is *City of Kenosha v. Bruno*, 412 U.S. 507, 515, 93 S.Ct. 2222, 2227, 37 L.Ed.2d 109, 117 (1973). That case involved a procedural due process claim as to the type of hearing required before refusing to renew a liquor license. Regarding *LaRue* the Court observed:

> The District Court, also, did not have the benefit of this Court's decision in *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). There we held again that while the Twenty-first Amendment did not abrogate a requirement of procedural due process, *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), it did grant the States broad authority over the distribution and sale of liquor. We also held that regulations prohibiting the sale of liquor by the drink on premises where there were nude but not necessarily obscene performances were facially constitutional.

Still another decision is *Craig v. Boren*, involving an equal protection attack based on gender discrimination: sales of beer permitted to females aged at least 18 but not to males until at least 21.

■ Plaintiffs' cited cases are not determinative here; they involve settings different from the present one. *LaRue* holds the nudity-alcohol compound sufficiently involves the public safety, health, and morals that we conclude the statute before us is not vulnerable to a due process attack; the statute is within the State's police power.

Plaintiffs seem to believe that an administrative regulation as in *LaRue* may prohibit nudity in the company of alcohol but a state criminal statute may not. *But cf. Davoren v. Iowa Employment Security Commission*, 277 N.W.2d 602 (Iowa 1979) (same test applies under statutory and regulatory equal protection challenges). We do not perceive a justification for such a distinction. If a state may ban nudity and alcohol by administrative rule, for what reason may it not do so by statute? Certainly plaintiffs are not arguing they may disobey a regulation but may not disregard a statute; a regulation also has the force of law. *Lilly v. Grand Trunk Western Railroad*, 317 U.S. 481, 488, 63 S.Ct. 347, 352, 87 L.Ed. 411, 417 (1943) ("Adopted in the exercise of the Commission's authority, Rule 153 acquires the force of law and becomes an integral part of the Act . . . ."). Traditionally states have probably exercised their police power in liquor control more frequently by statute and ordinance than by administrative rule. *See State v. Arluno*, 222 Iowa 1, 14, 268 N.W. 179, 185 (1936) ("It is now the well settled rule of law, however, that a prohibitory or regulatory liquor *act* does not violate any of the provisions of the Federal Constitution." (Emphasis added.)); 45 *Am.Jur.2d Intoxicating Liquors* §§ 24, 26, at 503, 504 (1969) ("The form or method of regulation and control is one of public policy for the decision of each state, and frequently the prevailing view is reflected by appropriate legislative enactments." Also, "State legislatures, having the right to regulate or prohibit the business of trafficking in intoxicating liquor, may delegate to an officer, board, or commission the power to determine facts and conditions upon which the operation of a statute relating to the liquor traffic depends, without violating the constitutional prohibition against the delegation of legislative functions."); 48 *C.J.S. Intoxicating Liquors* §§ 191b, 192a (1947). Our own *Wright* case involved an ordinance which carried criminal penalties.

We hold that plaintiffs' due process attack on section 728.5 is not meritorious.

II. *Equal Protection.* Plaintiffs ground their equal protection argument mainly on the last paragraph of section 728.5 which excepts "a theater, concert hall, art center, museum, or similar establishment."

A. On the way to their equal protection argument plaintiffs contend that the words we have quoted—or at least the words "similar establishment"—are too vague. We first observe that a "similar" establishment would be an establishment such as a theater, concert hall, art center, or museum, not only because of the word "similar" but also because of the ejusdem generis doctrine. *State v. Cusick*, 248 Iowa 1168, 84 N.W.2d 554 (1957). Plaintiffs could hardly claim, and we do not understand them to claim, that the Bittersweet and Lusty Lady are theaters, concert halls, art centers, museums, or similar establishments. To illustrate, plaintiff Bergeron testified:

Q. Your business is selling liquor; right? A. Yes.

Q. You don't pretend to be an art gallery here in Council Bluffs, do you? A. No.

Q. You don't maintain that you're a theater of any kind where people come to expand their interest in arts, do you? A. Well, I'd say shows would be shows that play in theaters.

Q. It's conceivable, what you're saying, is that Leigh Sharon could appear in some theater? A. Yes, she could and has.

Q. But the other 15 to 20 girls that appear with her on a nightly basis don't really appear in theaters? A. No.

Q. And they're not what you consider theater material; are they? A. No.

Q. They basically sell their bodies, and they bring people in to see them naked; isn't that true? A. I wouldn't say they sell their bodies. I'd say they entertain to make a living.

Q. The nicer their bodies, though, you indicated before, the more people like to look at them. A. Yes.

Q. So, in a sense, they're selling—not in the context that—in a sense, the nicer the body, the more people want to see their nipples, the more people want to see their genitals. Therefore, the better employee they are. A. Yes. I would say that.

We next observe that the statute confines the exception closely by two added clauses: the exception relates to a place of the kind in question (1) "which is primarily devoted to the arts or theatrical performances" (2) when the exhibition in question is "permitted or allowed as part of such art exhibits or performances."

■ We stated the vagueness test in *Knight v. Iowa District Court*, 269 N.W.2d 430, 432 (Iowa 1978):

Viewed as a penal enactment under which individuals are to be prosecuted, chapter 28A must satisfy two specific standards: (1) It must give a person of ordinary intelligence fair warning of what is prohibited, and (2) it must provide explicit standards for those who enforce it. (Citations omitted.)

Nonetheless, plaintiffs have a relatively heavy burden. Literal exactitude or precision is not necessary. Due process requires no more than a reasonably ascertainable standard of conduct. (Citations omitted.)

If the statute's meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law, or previous judicial constructions, due process is satisfied. (Citations omitted.) If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints against judicial legislation, we are duty bound to give chapter 28A that interpretation. (Citations omitted.)

■ In light of this standard, we hold that section 728.5 is sufficiently definite to be invulnerable to a vagueness charge under the facts of this case.

Plaintiffs cite examples of establishments which have some characteristics of a theater but perhaps are not theaters in a traditional sense. They say that proprietors of

such establishments would be unable to determine from section 728.5 whether they fall within that section—hence the section is void for vagueness. As in *Wright*, we do not decide whether section 728.5 as applied may be too vague under some circumstances in a twilight zone. This case is not in such a zone.

B. On the merits plaintiffs' equal protection challenge to section 728.5 is ironical. Plaintiffs object that excepted establishments serving alcoholic beverages can have nudity as part of their art exhibits or theatrical performances, but the Bittersweet and Lusty Lady cannot have nudity and alcohol. Thus a theater presenting a Greek drama in the nude, with alcoholic beverages available, is within the law, whereas the Bittersweet and Lusty Lady, presenting nude dancing girls and alcoholic beverages in their lounges, are in violation of the law. Plaintiffs claim this transgresses the guarantee that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, § 1.

The contention is ironical because the exception was probably inserted by the legislature to avoid a charge of overbreadth. Justice Marshall, dissenting in *LaRue*, found the California nudity-liquor regulations overbroad. He stated, "The regulations thus treat on the same level a serious movie such as 'Ulysses' and a crudely made 'stag film.' They ban not only obviously pornographic photographs, but also great sculpture from antiquity." 409 U.S. at 127, 93 S.Ct. at 402, 34 L.Ed.2d at 357. The plaintiffs here present a dilemma: overbreadth on the one side, and equal protection on the other.

■ Does this exception in section 728.5 abridge equal protection? As part of an overall alcohol regulatory system, the section does not implicate fundamental rights, such as race, *Moose Lodge* (refusal to serve blacks), or gender. *Craig v. Boren* (different ages for beer sales). The traditional "rational basis" test thus applies to the legislature's classification of theaters, concert halls, art centers, museums, and similar establishments. We expounded that test in *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973):

Under that test the classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Id.* It does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations; and the classification will be upheld if any state of facts reasonably can be conceived to justify it. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–502 (1970). The legislature has wide discretion in deciding classifications. *Cedar Mem. Park Cem. Ass'n v. Personnel Assoc., Inc.*, 178 N.W.2d 343, 350 (Iowa 1970). Our view of the wisdom of the legislation is irrelevant.

We also stated in *Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978):

[T]he statute has the presumption of constitutionality, the burden is upon the attacker to prove beyond a reasonable doubt that the statute violates equal protection concepts, and we do not pass upon the wisdom of the statute. *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977). In order to prove a statute violates equal protection a plaintiff must show there is no reasonable basis for the classification in the statute.

■ We need not now say that the legislature must except the establishments in question in order to avoid overbreadth; that question is not before us. *Cf. Wright v. Town of Huxley*, 249 N.W.2d at 698 (question reserved). But for the reasons expressed by Justice Marshall dissenting in *LaRue*, we hold that a rational basis exists for differentiation of the excepted establishments and lounges such as we have here.

In the factual setting of this case, plaintiffs' equal protection attack is not tenable. We thus uphold the judgment of the district court.

AFFIRMED.

All Justices concur except LARSON, J., who takes no part.