MRM, INC. d/b/a New Paris Massage; Bobby James Walker d/b/a Pleasure Palace Massage; James Touet d/b/a Cheri's Bath and Massage; William Cagle d/b/a K's Bath and Massage; Dilar Investments, Inc. d/b/a Gentle Touch, Lady Fingers Massage and Soft Touch; William Cagle and Becky Mayers, Appellants,

v.

CITY OF DAVENPORT, Iowa, Appellee.

No. 62886.

Supreme Court of Iowa.

March 19, 1980.

Doren Shifley and Thomas M. Kelly, Jr., of Shifley & Kelly, Davenport, for appellants.

Earl A. Payson and E. Scott Hartsook, Asst. Corp. Counsel, Davenport, for appellee.

REYNOLDSON, Chief Justice.

Plaintiffs by declaratory judgment action sought to establish the unconstitutionality of a new Davenport ordinance which extensively regulates massage parlors and persons engaging in· that activity. From an adverse judgment plaintiffs appeal and we affirm.

June 15, 1977, defendant City of Davenport enacted ordinance 18.05, entitled "Massage Establishments and Massage Services." This seventeen-page regulation specified detailed requirements for massage parlors including physical facilities and operating procedures. It imposed conditions for licensure, and provided for inspections and revocation of licenses, together with penalties for noncompliance. Ordinance 18.05 also required that persons giving massages be licensed under conditions which included physical examinations, restrictions against nudity, and 750 hours of instruction from a defined "accredited school."

July 20, 1977, the Davenport council amended ordinance 18.05, changed one section to conform to another, and provided the amended ordinance would become effective August 27, 1977. Before that date the plaintiffs, who were operators and employees of various Davenport massage parlors, filed action for declaratory judgment. They obtained a temporary injunction against enforcement of the regulation pending trial court's determination of the constitutional issues raised. William Cagle withdrew as plaintiff before the case was tried in district court.

Except for one provision not in issue here, trial court's December 15, 1978, judgment held that ordinance 18.05 was not violative of plaintiffs' right to privacy and exercise of free speech, was not a denial of equal protection, and was not so impermissibly vague and indefinite as to deny plaintiffs due process. We restructure and address plaintiffs' various propositions relied upon for reversal in divisions II through IV.

I. *Standard of judicial scrutiny.*

█ A threshold issue is the appropriate standard of judicial scrutiny to be applied in analyzing plaintiffs' claims of due process and equal protection violations. Plaintiffs assert defendant city should be required to defend its regulation by showing a "compelling state interest," or at least a "substantial" rational relation to an "articulated" state purpose. Defendant contends the constitutionality of the ordinance should be examined under the "rational basis" test because neither a "fundamental right" nor a "suspect classification" is involved.

Plaintiffs' claim that defendant must show a "compelling state interest" is posited on *Cianciolo v. Members of the City Council, City of Knoxville,* 376 F.Supp. 719, 723 (E.D.Tenn.1974), and *Corey v. City of Dallas,* 352 F.Supp. 977, 981 (N.D.Tex.1972), *rev'd,* 492 F.2d 496 (5th Cir. 1974) (reversed on standing). But both of those decisions were centered on regulations prohibiting any person from administering a massage to a person of the opposite sex—obviously a classification based on sex and potentially suspect. They have been criticized otherwise as a return to the discredited substantive due process concept developed in "an era when the Court thought the Fourteenth Amendment gave it the power to strike

down laws 'because they may be unwise, improvident or out of harmony with a particular school of thought.' *Dandridge* [ *v. Williams*], 397 U.S. [471,] 484, 90 S.Ct. [1153,] 1161 [, 25 L.Ed.2d 491, 501 (1970)]." *Pollard v. Cockrell*, 578 F.2d 1002, 1012–13 (5th Cir. 1978). *See Andrus v. Allard*, —— U.S. ——, —— n.25, 100 S.Ct. 318, 328, 62 L.Ed.2d 210, 224 (1979). No suspect classification is involved in Davenport ordinance 18.05. Under its provisions a licensed masseur or masseuse may administer a massage to a patron of either sex.

In any event, more recent cases have called into question the continued vitality of the *Cianciolo* and *Corey* holdings. As noted in *Tomlinson v. Mayor of Savannah*, 543 F.2d 570, 571 (5th Cir. 1976):

In *Smith v. Keater* [*sic, Keator*], 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974), *dismissing for want of a substantial federal question*, 285 N.C. 530, 206 S.E.2d 203 [(1974)]; *Rubenstein v. [Township of] Cherry Hill*, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974), *dismissing for want of a substantial federal question*, No. 10,027 (N.J.Sup.Ct. Jan. 29, 1974) [(unreported)]; and *Kisley v. City of Falls Church*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972), *dismissing for want of a substantial federal question*, 212 Va. 693, 187 S.E.2d 168 (1972), the Supreme Court dismissed appeals from state court decisions upholding the constitutionality of ordinances prohibiting heterosexual massages. Appellants in those three cases contended in the Supreme Court that the ordinances established invidiously discriminatory sex-based classifications in violation of the equal protection clause, worked an unreasonable abridgement of the right to pursue a legitimate livelihood; and created an unconstitutional irrebuttable presumption that all massages lead to illicit sexual behavior. The Supreme Court ruled that these challenges did not raise a substantial constitutional question.

Based upon the Supreme Court's discussion of the precedential effect of a dismissal for want of a substantial federal question in

*Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975), the *Tomlinson* court held the dismissals of the *Smith*, *Rubenstein*, and *Kisley* appeals foreclosed reconsideration of identical constitutional challenges. *Accord, Hogge v. Johnson*, 526 F.2d 833, 835 (4th Cir. 1975), *cert. denied*, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976); *Colorado Springs Amusements, Ltd. v. Rizzo*, 524 F.2d 571, 575–77 (3d Cir. 1975), *cert. denied*, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976); *Cullinane v. Geisha House, Inc.*, 354 A.2d 515 (D.C.), *cert. denied*, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); *City of Indianapolis v. Wright*, 267 Ind. 471, 476–77, 371 N.E.2d 1298, 1301, *appeal dismissed for want of a substantial federal question*, 439 U.S. 804, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978); *State v. Black*, —— Ind.App. ——, —— 380 N.E.2d 1261, 1266–67 (1978). *See also Pollard v. Cockrell*, 578 F.2d at 1010–11.

In *Black*, —— Ind.App. at ——, 380 N.E.2d at 1268, the Indiana court observed, "[B]ecause *Cianciolo* was previous to *Kisley* . . . and numerous other cases . . . we must assume that *Cianciolo*, which invalidated a similar massage parlor ordinance, is now overruled." *Accord, Wright*, 267 Ind. at 477 n.1, 371 N.E.2d at 1301.

As noted in *United Health Clubs of America, Inc. v. Strom*, 423 F.Supp. 761, 765 (D.S.C.1976), "the constitutionality of state statutes which regulate professions or trades invested with a strong public interest have [more recently] been measured against the more lenient rational relationship standard" (citing *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801–02 (1957); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955); and *Kotch v. Board of River Port Pilot Commissioners*, 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093, 1097 (1947)). In *Green v. Shama*, 217 N.W.2d 547, 554 (Iowa 1974), we applied the reasonable relationship test in examining the constitutionality of statutes regulating barbers and cosmetologists. We applied the same test in exploring the constitutionality of a statute

barring nudity in liquor-serving establishments. *Three K.C. v. Richter*, 279 N.W.2d 268, 275 (Iowa 1979).

We find no sufficient reason to impose the "compelling state interest" test in examining the constitutionality of ordinance 18.05.

The alternate review standard advanced by plaintiffs would require Davenport to show a *substantial* rational relation to an *articulated* state purpose. Here plaintiffs rely on *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (in which plaintiffs apparently equate substantiality with rationality), and *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282, 289 (1973) (articulation). *Reed* addressed a gender-based preference in estate administration. *McGinnis* merely equated "articulated" with "legitimate and nonillusory" rather than "primary" in applying the traditional rationality test to prisoners accumulating good-time credit toward parole eligibility. 410 U.S. at 276, 93 S.Ct. at 1062–63, 35 L.Ed.2d at 292. Plaintiffs cite no precedent for harnessing these two concepts in tandem as a standard for review.

On the other hand, many courts routinely have applied the traditional "rational relationship" test to statutes and ordinances regulating massage parlors, their operators and employees. *See, e. g., Tomlinson v. Mayor of Savannah*, 543 F.2d at 571; *Harper v. Lindsay*, 454 F.Supp. 597, 601 (S.D. Tex.1978); *United Health Clubs of America, Inc. v. Strom*, 423 F.Supp. at 765; *Rogers v. Miller*, 401 F.Supp. 826, 829 (E.D.Va. 1975) (1000 hours training requirement held reasonable); *Brown v. Brannon*, 399 F.Supp. 133, 148 (M.D.N.C.1975), *aff'd mem.*, 535 F.2d 1249 (4th Cir. 1976); *Ex parte Maki*, 56 Cal.App.2d 635, 644, 133 P.2d 64, 69 (1943); *City & County of Denver v. Nielson*, 194 Colo. 407, 410, 572 P.2d 484, 486 (1977) (ordinance prohibiting heterosexual massage held not "reasonable" under Colorado Constitution); *Clevenger v. City of East Moline*, 44 Ill.App.3d 168, 357 N.E.2d 719, 2 Ill.Dec. 552 (1976); *Wes Ward Enterprises, Ltd. v. Andrews*, 42 Ill.App.3d 458, 463–66, 355 N.E.2d 131, 135–37 (1976) (spe-

cific rejection of "compelling state interest" standard); *Massage Parlors, Inc. v. Mayor of Baltimore*, 284 Md. 490, 496–97, 398 A.2d 52, 56 (1979) (specific rejection of "compelling state interest" standard); *Oueilhe v. Lovell*, 93 Nev. 111, 114, 560 P.2d 1348, 1349 (1977) ("wrestling" partners of opposite sex); *Smith v. Keator*, 285 N.C. 530, 206 S.E.2d 203, *appeal dismissed for want of a substantial federal question*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974); *Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E.2d 18 (1968); *Patterson v. City of Dallas*, 355 S.W.2d 838 (Tex.Civ.App.1962), *appeal dismissed for want of a substantial federal question*, 372 U.S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963); *Hart Health Studio v. Salt Lake County*, 577 P.2d 116 (Utah 1978); *Kisley v. City of Falls Church*, 212 Va. 693, 187 S.E.2d 168, *appeal dismissed for want of a substantial federal question*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972).

We hold the "rational relationship" standard of review utilized in these decisions should apply here.

II. *Equal protection challenge.*

Although plaintiffs did allege constitutional equal protection violations in their petition, the issue appears to be raised in this appeal, if at all, only as included in a due process issue presented for review. No arguments or citations of authority are directed to an equal protection claim. Our consideration of the alleged unconstitutionality of ordinance 18.05 on equal protection grounds will be limited accordingly, addressing only briefly the assertions made in the petition.

█ And as none of the classifications in this ordinance are based upon sex, race, alienage or national origin, the ordinance is subject to traditional equal protection analysis. Plaintiffs have the burden of proving the ordinance unconstitutional, and must negate every reasonable basis upon which the ordinance may be sustained. *Chicago Title Insurance Co. v. Huff*, 256 N.W.2d 17, 25 (Iowa 1977); *see Three K.C. v. Richter*, 279 N.W.2d at 275; *Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978); *City of*

*Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977).

▮ Referring to plaintiffs' specifications of unconstitutional classifications, "outcall" massage operations rationally may be classified separately, as there are no facilities to inspect. Outcall masseurs and masseuses would be required to obtain a license under section 18.05–2(b) of the ordinance. Athletic trainers ordinarily are employed permanently by an organization and serve a limited clientele. Barbers and cosmetologists are regulated separately and extensively by state law. While massage practitioners who have practiced at a single location for five years need not be licensed, they must have graduated from an approved school. The Davenport council rationally could have determined that the demonstrated education and experience of such a practitioner would adequately protect the public's health and welfare. Plaintiffs' claim that owners and operators of health spas, figure salons and similar businesses are excluded finds no support in the record. If the personnel of these establishments commence the practice of massage, apparently ordinance 18.05 would apply.

The same or similar classifications have been upheld in other jurisdictions. *See Brown v. Haner*, 410 F.Supp. 399, 400 n.3 (W.D.Va.1976); *Rogers v. Miller*, 401 F.Supp. at 827–28; *Clevenger v. City of East Moline*, 44 Ill.App.3d at 170, 357 N.E.2d at 722–23, 2 Ill.Dec. at 555; *Wes Ward Enterprises, Ltd. v. Andrews*, 42 Ill. App.3d at 466–67, 355 N.E.2d at 137–38; *Massage Parlors, Inc. v. Mayor of Baltimore*, 284 Md. at 497, 398 A.2d at 57 (athletic trainers); *Kisley v. City of Falls Church*, 212 Va. at 697–98, 187 S.E.2d at 171–72 (barber shops).

Assuming plaintiffs have raised an equal protection issue in this appeal, we find it to be without merit.

III. *Due process challenge.*

Plaintiffs' due process challenge to ordinance 18.05 has two prongs: one alleges a deprivation of property without due process, the second asserts various provisions of the regulation are void for vagueness.

A. Plaintiffs contend ordinance 18.05 abridges their right to pursue a legitimate livelihood.

▮ Of course, the deprivation of substantial profits is a deprivation of property, so the issue is whether the deprivation is without due process of law. *Three K.C.*, 279 N.W.2d at 271. But the right to pursue any trade or calling is subordinate to the right of the state to regulate such freedom of action where required to protect the public health, safety or welfare. The regulation, to be constitutional, must have a definite, rational relationship to the ends sought to be obtained. *Huff*, 256 N.W.2d at 26; *Green*, 217 N.W.2d at 554–55; *City of Osceola v. Blair*, 231 Iowa 770, 772–73, 2 N.W.2d 83, 84 (1942).

▮ Plaintiffs first attack the ordinance's licensing requirement of 750 hours of instruction at an "accredited school" as being arbitrary and unreasonable. Davenport's evidence indicated the 750-hour requirement was a reduction of the 1000 hours of coursework required by the American Massage and Therapy Association. The requirement is significantly less than the 2100 hours of instruction imposed for barbers and cosmetologists. §§ 157.10, 158.8, The Code 1979. It has a rational relationship to public health:

It is not unreasonable for the city to require of one proposing to sell massage services to the public, that such person demonstrate evidence of training and knowledge in that field. The opinion of the legislative body as to what training is an essential prerequisite for the public health and safety, to prevent injury or the spread of disease, is presumptively valid. In the absence of any clear demonstration by plaintiff that the requirements are unrelated to the purposes of the act, the courts will not substitute their opinions for that of the legislative authorities.

*Clevenger v. City of East Moline*, 44 Ill. App.3d at 172–73, 357 N.E.2d at 723, 2 Ill.Dec. at 556. *See also Rogers v. Miller*,

401 F.Supp. at 829 & n.1 (upholding a 1000-hour requirement); *Massage Parlors, Inc. v. Mayor of Baltimore*, 284 Md. at 498 n.5, 398 A.2d at 57 (upholding a 500-hour requirement).

Nor do we think the "accredited school" requirement is unreasonable. It is defined extensively in section 18.05–1 of the ordinance. Although the list of fourteen such schools was not provided by Davenport at the time the ordinance was enacted, the evidence indicates it was promulgated before the effective date of the ordinance and referred to by the senior assistant city clerk in response to telephone inquiries. Plaintiffs attempt to distinguish their massage as "relaxing" or "recreational" as opposed to "therapeutic," but their expert at trial characterized the line as "very hazy" and testified she could not "really draw a line there."

Neither should the city be required to make that distinction. In the justifiable opinion of the Davenport council the same dangers of disease and injury might well accompany both "types" of massage. We find no due process violation in the accredited school requirement.

■ Plaintiffs additionally assert the 7 a.m. to 10 p.m. operating hour limitation of the ordinance rationally cannot be related to public safety and welfare. The Davenport council might have found the nighttime hours ordinarily are accompanied by increased criminal activity in commercial establishments at a time when the police force is reduced. Such operating time restrictions have been upheld as reasonable in other jurisdictions. *Pollard v. Cockrell*, 578 F.2d at 1013; *Reddish v. Roberts*, 460 F.Supp. 152, 153 (M.D.N.C.1978) (8 a.m. to midnight restriction upheld); *Saxe v. Breier*, 390 F.Supp. 635, 636 (E.D.Wis.1974); *Brix v. City of San Rafael*, 92 Cal.App.3d 47, 51, 154 Cal.Rptr. 647, 650 (1979); *City of Spokane v. Bostrom*, 12 Wash.App. 116, 119, 528 P.2d 500, 502 (1974). *See also Hvamstad v. City of Rochester*, 276 N.W.2d 633 (Minn.1979) (affirming denial of temporary injunction against 10 p.m. closing restriction, because plaintiff unlikely to succeed on merits).

■ Finally, plaintiffs argue enforcement of sections of the ordinance prohibiting plaintiffs or their patrons from exposing, or failing to conceal, on plaintiffs' premises, "any portion" of their sexual or genital parts (specifically defined in subsection 18.05–21(e)) may deprive them of "patrons dressed in halter tops, shorts, evening gowns, and similar garments."

Defendant argues this effect is pure supposition, as the ordinance has never been enforced against the plaintiffs. We have observed that

an ordinance, like a statute, is not unconstitutional on its face unless it is unconstitutional in every conceivable state of facts, and it will not usually be held unconstitutional as applied unless it is unconstitutional in the factual situation before the court.

*Baker v. City of Iowa City*, 260 N.W.2d 427, 430 (Iowa 1977). We find no reason to assume that ordinance 18.05 will be applied or enforced in an unconstitutional manner, *see United Health Clubs of America, Inc. v. Strom*, 423 F.Supp. at 766–67; *Rogers v. Miller*, 401 F.Supp. at 829, and hold this ground for reversal to be without merit.

B. We turn now to plaintiffs' contention that portions of ordinance 18.05 are so vague they are deprived of constitutional due process. In light of this due process challenge and ordinance section 18.05–27, which provides that a person violating any provision of the ordinance is guilty of a misdemeanor punishable by a $100 fine or 30 days imprisonment, we reexamine our standard of judicial scrutiny.

■ Ordinarily a "significantly higher" standard of certainty is required when a vagueness challenge is made in the context of a criminal prosecution than in situations involving civil remedies. *Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979); *Knight v. Iowa District Court*, 269 N.W.2d 430, 432 (Iowa 1978); *State ex rel. Turner v. Koscot Interplanetary, Inc.*, 191 N.W.2d 624, 629 (Iowa 1971). Also relevant here is *Incorporated Town of Carter Lake v. An-*

*derson Excavating & Wrecking Co.*, 241 N.W.2d 896, 903 (Iowa 1976), where we wrote, "[W]hen the ordinance is regulatory and its principal purpose is to promote the public interest and welfare, the penal provision is merely incidental."

■ This declaratory judgment action was brought in equity and our review is de novo. Iowa R.App.P. 4. Unlike *Williams* and *Knight*, this appeal does not confront us with a criminal prosecution, and we do not reach the question whether the ordinance would withstand the stricter scrutiny appropriate in that context. Plainly, ordinance 18.05 is aimed at the *regulation* of massage parlors, not criminal *punishment* of operators and employees for specific acts. *Cf.* § 99.1, The Code (maintenance of building for purpose of prostitution is nuisance subject to injunction and abatement), which was held to be penal and subject to strict construction in *State ex rel. Clemens v. Toneca, Inc.*, 265 N.W.2d 909, 914 (Iowa 1978).

Penal provisions similar to that found here are to be found in chapter 157, The Code 1979 (cosmetology) and chapter 158, The Code 1979 (barbering), yet in construing those chapters we did not apply strict standards of judicial scrutiny. *Green v. Shama*, 217 N.W.2d at 555–56. In this case trial court treated the ordinance as nonpenal, and plaintiffs' brief concedes trial court applied the appropriate test. In *Koscot*, 191 N.W.2d at 629, we pertinently said:

Most courts separate the remedial and penal sections of a legislative enactment where both are involved. Resultantly the Act is interpreted liberally where remedy is sought, strictly when the action brought is penal. We adopt that view.

A law providing regulations conducive to public good or welfare, such as suppression of fraud, is ordinarily remedial, and as such liberally interpreted.

(Citations omitted.) To the same effect, *see* 73 Am.Jur.2d *Statutes* § 292 (1974). Accordingly, as in *Koscot* and *Green*, we liberally construe ordinance 18.05 to effect the object of the ordinance. *Id.*

Plaintiffs first complain of difficulty in identifying an "accredited school." What we have written in division III(A), above, adversely disposes of this contention.

Plaintiffs next assert ordinance 18.05 is "imprecise and unclear as to what constitutes advertising and the contents thereof."

Davenport's ordinance at subsection 18.-05–11(f) provides:

No massage establishment granted a license under the provision of this Article shall place, publish or distribute or cause to be placed, published or distributed any advertising matter that depicts any portion of the human body that would reasonably suggest to prospective patrons that any service is available other than those services as described in Section 18.-05–1 [definitions of massage, massage establishment, public bath house] in this Chapter, nor shall any massage establishment indicate in the text of such advertising that any service is available other than those services as described in Section 18.05–1 in this Chapter.

■ We examine this provision in light of our statement in *Williams*, 281 N.W.2d at 625 (quoting *Knight*, 269 N.W.2d at 432), "If vagueness can be avoided by a reasonable construction, consistent with the statute's purpose and traditional restraints against judicial legislation, we are duty bound to give [the statute] that interpretation." We consider the entire legislative act and, so far as possible, interpret its various provisions in light of their relation to the whole. *Id.* at 626.

■ We see the above provision relating to advertising as one designed to prevent misrepresentation to the consuming public. Commercial speech may be regulated so as to prevent deception. *Bates v. State Bar of Arizona*, 433 U.S. 350, 383–84, 97 S.Ct. 2691, 2708–09, 53 L.Ed.2d 810, 835–36 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 & n.24, 96 S.Ct. 1817, 1830–31, 48 L.Ed.2d 346, 364 (1976) ("Obviously much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no

obstacle to a State's dealing effectively with this problem."). The "overbreadth analysis" which represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court applies weakly, if at all, in the ordinary commercial context. *Bates*, 433 U.S. at 380, 97 S.Ct. at 2707, 53 L.Ed.2d at 834.

When coupled with the specific definitions of "massage," "massage establishment" and "public bath house," included in the advertising subsection by reference, and the provisions of the ordinance prohibiting exposure of sexual or genital parts [which are in turn specifically defined], we are not convinced the advertising regulation would pose any mental hazards for a person reasonably attempting to comply with it and advertise only those services permitted by ordinance 18.05. The phrase "unreasonably suggest" relates to the prohibition against depicting certain portions of the human body. Reasonably interpreting these provisions in light of the relationship of these words to the whole act, we hold only depicting of sexual or genital parts as defined in section 18.05–21(e) would fall under the prohibition of these provisions. So construed, the issue of unconstitutional vagueness is avoided. *See State v. Williams*, 238 N.W.2d 302, 304–08 (Iowa 1976). We have often read into a statute various safeguards in order to save it from constitutional infirmity. *See, e. g., State v. Monroe*, 236 N.W.2d 24, 37 (Iowa 1975); *State v. Drummer*, 254 Iowa 324, 117 N.W.2d 505 (1962). Restrictions upon advertising apparently similar to section 18.05–11(f) withstood judicial scrutiny in *Clevenger*, 44 Ill.App.3d at 169–70, 357 N.E.2d at 721, 2 Ill.Dec. at 554, and *Wes Ward Enterprises*, 42 Ill.App.3d at 463, 355 N.E.2d at 135.

Plaintiffs further argue they are unable to ascertain the anatomical boundaries of "sexual or genital parts" of the body although they are defined as including "the genitals, pubic area, buttocks, anus, or perineum of any person, or the vulva or breasts of a female." They similarly complain that the provision requiring sexual or genital parts to be concealed "with a fully opaque covering" is vague. Plaintiffs hypothesize various situations to support their argument.

A court will not engage in the presumption that officials charged with enforcement of a regulation will do so in an unconstitutional or illegal manner. *Strom*, 423 F.Supp. at 765. Nearly identical provisions survived facial attack in *Harper v. Lindsay*, 454 F.Supp. at 602–03 & n.1 (constitutional attack alleged infringement of freedom of personal appearance), and *Wes Ward Enterprises*, 42 Ill.App.3d at 462, 355 N.E.2d at 134. *See also Wright v. Town of Huxley*, 249 N.W.2d 672, 678 (Iowa 1977) ("We find it difficult to believe [appellant] seriously contends people of common intelligence . . . would not be able to determine when the ordinance was violated by exposing to public view the breasts, buttocks, or genitals.").

Finally, plaintiffs argue their due process rights are violated by section 18.05–15(a) which permits the city clerk to require an immediate physical examination when he or she has cause to believe a massage technician is capable of communicating a contagious disease to others. Section 18.05–15(a) requires all who desire to perform as a massage technician to undergo a physical examination for contagious and communicable diseases. It further provides, "The Clerk *or his duly authorized representative*, when he has cause to believe that the massage technician is capable of communicating any contagious disease to others, may at any time require an immediate physical examination of any such person." (Emphasis supplied.)

Plaintiffs assert this provision "is unconstitutionally vague and indefinite and an improper delegation of legislative discretion to the city clerk." No citation of authority supports these assertions. Davenport points out this is a facial attack. There is no indication the clerk will act arbitrarily, and the evidence is that the clerk will rely on the city health officer as a "duly authorized representative" to make

the determination an additional examination is required. "Cause" in the sense used here has been equated with "good cause." *Merrimack Park Recreation Association, Inc. v. County Board of Appeals*, 228 Md. 184, 188, 179 A.2d 345, 347 (1962); *Ohio Casualty Insurance Co. v. Insurance Commissioner*, 39 Md.App. 547, 551, 387 A.2d 622, 624 (1978); *Duenke v. St. Louis County*, 358 Mo. 91, 97, 213 S.W.2d 492, 496 (1948); *Lovelace v. Ingram*, 518 P.2d 1102, 1104 (Okla.1973). A statute is not unconstitutionally vague if its meaning may be ascertained by reference to prior judicial determinations. *State v. Willis*, 218 N.W.2d 921, 923 (Iowa 1974). Good faith enforcement of this provision is presumed in a facial challenge. *Strom*, 423 F.Supp. at 765.

A similar provision withstood constitutional attack in *Brown v. Brannon*, 399 F.Supp. at 138–39, 143.

We have studied the other vagueness allegations made by plaintiffs and find no constitutional defect.

### IV. *Right of privacy.*

 Plaintiff-masseuse Becky Mayers contends ordinance 18.05 violates her "fundamental right of privacy" and that in the absence of any compelling state interest to justify the violation, the ordinance is unconstitutional. She asserts a majority of this court in *State v. Pilcher*, 242 N.W.2d 348, 359 (Iowa 1976), extended the right of privacy to protect "the manner of sexual relations performed in private between consenting adults of the opposite sex not married to each other."

The alleged violative language is contained in section 18.05–21(a), which makes it unlawful for "any person, in a massage parlor, to place his or her hand or hands upon, to touch with any part of his or her body, to fondle in any manner, or to massage, a sexual or genital part of any other person." Mayers also objects to subsections 18.05–21(b) and (c) which make it unlawful for any person in a massage parlor to expose, to have exposed by another person, or to fail to conceal by fully opaque covering, the sexual or genital parts of his or her body.

The short answer to Mayer's contention is that *Pilcher* did not address the issue of *commercialized* sexual activity. We refused to extend the right of privacy into a commercialized sex context (prostitution) in *State v. Price*, 237 N.W.2d 813, 818 (Iowa), *appeal dismissed*, 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370 (1976). In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446, 461 (1973), the Supreme Court refused to compare "a[n adult movie] theater, open to the public for a fee, with the private home of *Stanley v. Georgia*, 394 U.S. [557,] 568, 89 S.Ct. [1243,] 1249, [22 L.Ed.2d 542, 551 (1969)], and the marital bedroom of *Griswold v. Connecticut*, 381 U.S. [479,] 485–86, 85 S.Ct. [1678,] 1682–83, [14 L.Ed.2d 510, 516 (1965)]," and thus declined to extend the constitutionally protected right of privacy into a commercial setting.

Federal courts, faced with this issue, have found no right of privacy attaches to the practice of massage for hire. *J.B.K., Inc. v. Caron*, 600 F.2d 710, 711 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980) ("We do not agree that the right to privacy extends to all sexual practices performed in private including the commercialized sexual activities regulated in this case. . . . [F]or us to say that our Constitution incorporates the proposition that conduct involving consenting adults only is always beyond state regulation, is a step we are unable to take.") (quoting *Slaton*, 413 U.S. at 68, 93 S.Ct. at 2641, 37 L.Ed.2d at 463); *Pollard*, 578 F.2d at 1016; *Stratton v. Drumm*, 445 F.Supp. 1305, 1309 (D.Conn.1978); *Brown v. Haner*, 410 F.Supp. at 401; *Brown v. Brannon*, 399 F.Supp. at 138–39. *See also Tomlinson v. Mayor of Savannah*, 543 F.2d at 571–72; *Harper v. Lindsay*, 454 F.Supp. at 603. Plaintiffs have produced no authorities holding a constitutional right of privacy extends to operators and employees of a commercial massage establishment.

The interests sought to be protected by the privacy right have no nexus with the protection sought by plaintiffs. We hold

ordinance 18.05 does not violate any privacy right of plaintiff Mayers.

As interpreted in this opinion, we find Davenport ordinance 18.05 is not vulnerable to the constitutional challenges raised by plaintiffs. Trial court's judgment is affirmed.

AFFIRMED.