**UNITED HEALTH CLUBS OF AMERICA, INC., et al., Plaintiffs,**

v.

**J. P. STROM and Daniel R. McLeod, Defendants.**

**Civ. A. No. 75–1091.**

United States District Court,
D. South Carolina,
Columbia Division.

Heard Oct. 22, 1976.

Decided Nov. 24, 1976.

Henry R. Weeks, Jr., Columbia, S. C., George S. Daly, Jr., Charlotte, N. C., for plaintiffs.

M. Elizabeth Crum, Kenneth B. Woodington, Columbia, S. C., for defendants.

## THREE–JUDGE COURT AMENDED OPINION AND ORDER

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and BLATT, District Judge.

PER CURIAM.

On June 24, 1975, the Governor of South Carolina approved Act Number 281[1], passed by the General Assembly of South Carolina, and generally known as the Massage Parlor Act. On June 26, 1975, the plaintiffs filed this action, alleging that the aforesaid Act was unconstitutional, and in their complaint, the plaintiffs sought a Three-Judge Court[2] for the purpose of having such court invalidate the Act, and, at the same time, the plaintiffs sought an injunction from the single judge to whom the case was assigned enjoining enforcement of the terms of the Act pending a hearing by the Three-Judge Court. By letter dated July 3, 1975, addressed to the single judge, who then had jurisdiction of the case, the office of the Attorney General of South Carolina, representing the defendants herein, informed the court that the defendants had no objection to the issuance of an injunction restraining enforcement of the Act, and the court learned that the reason for the defendants' consent to such injunction was due to the fact that state personnel required to enforce the provisions of the Act were not then available. Accordingly, an injunction preventing enforcement of the Act was issued on July 10, 1975, which injunction has remained in effect.

In the ensuing months, all of the individual parties except the plaintiff, United Health Clubs of America, Inc., an alleged eleemosynary corporation representing a group of individual massage parlors, were voluntarily dismissed from the action and discovery was undertaken by the parties so that a hearing could be held by the single judge to determine whether he should request that a Three-Judge Court be convened in this case.

After the commencement of the action and before a decision had been reached by the single judge as to the propriety of certifying this case for Three-Judge consideration, several important cases involving massage parlor ordinances or statutes, with provisions similar to the one here under attack, were decided by the Supreme Court of the United States and by the Fourth Circuit Court of Appeals. In *Hogge v. Johnson,* 526 F.2d 833 (4th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976), the plaintiffs sought injunctive and declaratory relief against local ordinances of the cities of Hampton and Newport News, Virginia, which ordinances, among other things, prohibited opposite sex massage. In that case, the validity of the prohibition against opposite sex massage was upheld, the Fourth Circuit Court of Appeals basing its decision upholding the

1. No. 281 (1975) S.C. Acts & Jt.Res. 686, S.C. Code Ann. §§ 56–831 to –847 (Cum.Supp.1976).

2. It is to be noted that the United States Congress in Public Law 94–381, approved August 12, 1976, greatly restricted the convening of three-judge courts; but provided in Section 7 of the Act that it would not apply to any action commenced before its date of enactment. See, 1976 U.S.Code Congressional & Admin.News 3160.

validity of such a prohibition on the dismissal by the United States Supreme Court, for want of a substantial federal question, of the case of *Kisley v. City of Falls Church*, 212 Va. 693, 187 S.E.2d 168, *appeal dismissed*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972). *Kisley* had presented the identical issue regarding opposite sex massage to the United States Supreme Court as that which the plaintiff contested here under Section 11 of the South Carolina Act, S.C.Code Ann. § 56–840 (Cum.Supp. 1976), which Section likewise proscribes this type of massage. Furthermore, in *Colorado Springs Amusements Ltd. v. Rizzo*, 524 F.2d 571 (3rd Cir. 1975), *cert. denied*, —— U.S. ——, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976), the Third Circuit Court of Appeals had determined that a Supremacy Clause attack on a provision similar to Section 11 on the ground that it conflicted with the Civil Rights Act of 1964, 42 U.S.C. Section 2000e(b), could not be sustained, for lack of standing, in any instance in which the massage parlor employer did not employ at least fifteen (15) persons for each working day in each twenty (20) or more calendar weeks in the current or preceding calendar year, a factor which the plaintiff could not prove in this case. An additional and even more meaningful decision on a Supremacy Clause attack upon a provision against opposite sex massage arose from the New Jersey case of *Rubenstein v. Cherry Hill*, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974), in which the United States Supreme Court dismissed a Supremacy Clause attack based on a conflict between the Civil Rights Act and an opposite sex massage ordinance for want of a substantial federal question.

In view of the decisions heretofore set forth, the plaintiff's attorney on February 11, 1976, completely withdrew plaintiff's attack on Section 11 of the South Carolina Act, the provision against opposite sex massage, and again requested that a Three-Judge Court be convened for the purpose of hearing the other questions raised by the plaintiff as to the constitutionality of other provisions of the South Carolina Act. Thereafter, on February 27, 1976, the single judge filed a certificate with the Honorable Clement F. Haynsworth, Jr., Chief Judge of the Fourth Circuit Court of Appeals, as required by 28 U.S.C. Section 2281, requesting that a Three-Judge Court be convened to hear and decide the issues raised by the plaintiff, and on March 9, 1976, a Three-Judge Court was designated consisting of Chief Judge Haynsworth, the Honorable Donald Russell, United States Circuit Judge, and the single judge, United States District Judge Sol Blatt, Jr., who had originally assumed jurisdiction of the case. A briefing schedule was established and the Three-Judge Court convened in Greenville, South Carolina, on October 22, 1976, to hear the issues remaining in the case.

The first question before the court was raised by the defendants' assertion that the plaintiff lacked standing to challenge the constitutionality of the Act, basing their contention on the fact that since Section 11 of the Act is unquestionably valid, and it was admitted that the members of the plaintiff's group were engaged almost entirely in opposite sex massage, the plaintiff lacked a sufficient personal stake in the result to present a challenge to the Act, because the plaintiff could present no "injury in fact." *See, Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); and *Association of Data Processing v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The plaintiff, however, asserted that it did have standing, since there was no irrefutable evidence indicating that none of its members would apply to be licensed under the Act, and, furthermore, that at least a small part of the business of one or more of its massage parlor employers did involve similar sex massage; thus, the plaintiff insisted that its members would suffer economic loss if they were required to comply with the alleged constitutional provisions of the Act. *Arnold Tours v. Camp*, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970).

Assuming that the plaintiff and its members do have standing to challenge the constitutionality of any provisions of the Massage Parlor Act, this court is of the

opinion that the plaintiff's constitutional attacks on the Act have no merit. At the threshold of an analysis on the constitutionality of any statute, the reviewing court must, of course, identify the standard of judicial scrutiny that is appropriate to the case before it. Under general principles, if a regulation or statute imposes a "fundamental right", *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), or creates an inherently "suspect classification" such as race, nationality, or alienage, the challenged Act will be subjected to "close judicial scrutiny" requiring the state to establish a "compelling" interest in its enactment. See, *e. g.*, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). If, on the other hand, the regulation does not affect a fundamental right or create a suspect classification, it has traditionally been accorded a presumption of constitutionality that may not be disturbed unless the enactment is shown to rest on grounds "wholly irrelevant to the achievement of (a legitimate) state's objective." *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 33 S.Ct. 441, 57 L.Ed. 570 (1913). It is to be noted that the constitutionality of state statutes which regulate professions or trades invested with a strong public interest have normally been measured against the more lenient rational relationship standard. *Schware v. Board of Law Examiners of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Kotch v. Board of River Port Pilot Commissioners*, 330 U.S. 552, 556, 67 S.Ct. 910, 91 L.Ed. 1093 (1947).

Since this action neither affects "fundamental" or "First Amendment" rights, nor rights which have been held in the past to bear a "suspect" classification, this court is of the opinion that the proper judicial test for it to use is to determine whether the provisions of the Massage Parlor Act under attack bear a reasonable relationship between the purpose of the Act and the classifications used in it.

The United States Supreme Court has recognized a presumption which operates in favor of the reasonableness of legislative classifications. If any state of facts can adequately be advanced that would justify the classifications, the existence of those facts will be assumed by the court to be the basis of the classifications in order to uphold the legislation. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). In ascertaining the purpose of the statute, so that this court can determine whether a rational relationship does exist between the statute and the state's interest, this court must focus not only on the terms of the statute, but, also, on the context in which it was enacted and its legal and practical operative effect. *Richards v. U. S.*, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1961). Usually, all that need be shown is that the classifications adopted in the statute are not based on reasons totally unrelated to the purpose of the statute, because as long as there is a sufficient relationship with a proper legislative purpose, the statute should be upheld. Such a situation occurs whenever the court, in its opinion, determines that the prevailing social, economic and historic factors involved justify the classifications and the disparity resulting therefrom. *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). While the provisions of a massage parlor ordinance of the City of Durham, North Carolina, sustained in *Brown v. Brannon*, 339 F.Supp. 133 (M.D.N. C.1975), aff'd mem. 535 F.2d 1249 (4th Cir. 1976), were more specific than the provisions of the Act here under attack[3], the South Carolina Act is not so vague, in this court's opinion, using the rational relationship test, as to render it invalid. This court will not engage in a presumption that the South Carolina officials charged with the enforcement of the provisions of this Act will do so in an unconstitutional or illegal manner. At the very least, the provisions

---

**3.** See appendix, *Brown v. Brannon, supra*, at page 139.

of the South Carolina Massage Parlor Act are equally as specific as the provisions of the City of Fayetteville ordinance upheld in *Smith v. Keator*, 285 N.C. 530, 206 S.E.2d 203, *appeal dismissed*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1975).

As to the challenge made to that provision of the South Carolina act requiring that each applicant provide proof of good moral character, it appears that similar requirements have been upheld in order to obtain a license in other businesses or professions, *Konigsberg v. State Bar of California*, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), and this court feels that, under the circumstances here involved, such a provision is perfectly valid and reasonable.

While this court has the very highest regard for the Supreme Court of North Carolina, we are compelled to disagree with that court's conclusion reached in *Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E.2d 18 (1968), wherein it was held, under an ordinance similar to that with which we are here concerned, that there was no rational reason for placing Y.M.C.A. and Y.W.C.A. Health Clubs in a separate classification and exempting these clubs, as does the South Carolina Act, from the provisions of the Charlotte ordinance. As noted earlier, under classic equal protection analysis, only a rational relationship to the state's interest is required to differentiate between these eleemosynary clubs and massage parlors which operate for profit. This court is of the opinion that the long history which both the Y.M.C.A. and Y.W.C.A. have established as health clubs, conforming to every provision of the law, without encroaching in any respect, on the health, safety, welfare or morals of the citizens of South Carolina, provides ample reason for the General Assembly to exempt these two organizations from the coverage of the South Carolina Massage Parlor Act. Having conducted their businesses in a perfectly legitimate manner for so many years, this court agrees with the General Assembly that there is no reason to conclude that these organizations will not continue their present lawful method of conducting their businesses in the years ahead. Additionally, even if this court concluded that the exemption of the Y.M.C.A. and Y.W.C.A. would constitute an improper and unreasonable classification for these two clubs, if such exemption were attacked by other nonprofit organizations administering massage without sexual orientation, *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), under the circumstances here involved, this court is of the opinion that such classification made in the Act is unquestionably reasonable insofar as the plaintiff is concerned.

Plaintiff further complains that Sections 8 and 9(a), and a part of Section 11, of the South Carolina Act, authorize state officials to make warrantless searches of member establishments, without proper cause, thereby violating the proscriptions of the Fourth Amendment. Plaintiff relies for this position on *Camera v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), in which case an attempt was made to prosecute an apartment lessee for refusing to allow an inspection of his premises by city officials under the provisions of a city housing code. The United Supreme Court in that case held that the Fourth Amendment barred prosecution of a person who had refused to permit the warrantless inspection there of his personal residence, but that case is obviously quite different from the instant case involving a business operating with a license issued by the state. Sections 8 and 11 of the Act require that the massage parlor operators maintain certain records which are subject to inspection at reasonable times, and Section 9(a) merely directs SLED to inspect these records. Thus, these regulations are not the type condemned by the Court in *Camera, supra*, and in *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Nothing in the Act purports to grant SLED the authority to conduct warrantless inspections or to permit such inspections of the records in violation of the Fourth and Fourteenth Amendments and, as we have previously stated herein, we have no reason to assume that SLED will attempt to enforce these provi-

sions of the Act in an unconstitutional or illegal manner. Should any constitutional violations occur, the plaintiff, or any aggrieved party, may seek the assistance of the court at that time to protect its rights.

Furthermore, under the state's police power, it has long been recognized that the state may require that businesses be inspected by state authorities at reasonable times for safety, or for other legitimate reasons. Inspection of buildings by state fire marshals, and inspections of businesses where alcoholic beverages are sold or consumed by agents of the State Alcohol and Beverage Control Commission, are only two of many examples of such statutorily designated warrantless inspections, and this court does not intend to intimate that there is anything unconstitutional or unreasonable for the General Assembly of South Carolina having placed massage parlors under similar regulations.

Based on the foregoing, it is

ORDERED, that the motion of the defendants for summary judgment herein be, and the same hereby is, granted.

IT IS FURTHER ORDERED, that the injunction heretofore issued in this case be, and the same hereby is, dissolved.

AND IT IS SO ORDERED.