OPINION OF THE COURT
Sidney H. Asch, J.
In this article 78 proceeding, petitioners, 36 individual towing car operators, licensed by the Police Department of the City of New York, and an association of licensed towing car operators, seek to restrain various city (and State) officials from enforcing various provisions of section 436-7.0 of the Administrative Code of the City of New York relating to the "Licensing and Regulation of towing cars”, the police department tow car regulations promulgated by the commissioner for enforcement by the license division of the police department, and the transportation department regulations relating to towing on enumerated bridges, roadways, parkways and expressways within New York City. Petitioners also seek to enjoin the transportation administrator of the city and the Commissioner of Transportation of New York State from allowing tow cars to travel throughout the city at excessive rates of speed. The petition is granted in part, as indicated below.
Petitioners’ attack upon administration of the tow car industry within the City of New York is set forth in a somewhat rambling narrative which, while bearing the title "Petition”, is in fact an affidavit of one Anthony Kiss, principal of Love Towing, Inc., one of the named petitioners. This curious pleading is verified by the other named petitioners. Perhaps predictably, given the narrative character of the petition, separate and distinct causes of action are not stated. Rather through a mixture of, on the one hand, conclusory observations, and on the other, allegations of fact, petitioners have mounted an attack upon the administrative underpinnings of *1067 the tow car industry of this city. Some criticism seems justified.
To the extent that the essential elements of petitioners’ claims are discernible in their petition, the incorrect form of that pleading shall be disregarded (CPLR 103, subd [c]). To place the contentions of the petitioners in proper context it is necessary to consider the format of the regulations at issue. The licensing scheme established by section 436-7.0 (subd d, pars 1, 2) of the Administrative Code provides for two types of tow car licenses: an "unrestricted license” for towers who operate facilities for repair of vehicles requiring body or collision work, and who, by virtue of that license, are authorized to solicit at the scene of accidents and a "restricted license” for owners of other tow trucks for public hire. Section 436.7.0 (subd b, par 2, cl [b]) of the Administrative Code states that government vehicles and vehicles used for towing vehicles "owned, leased or operated by the owner or lessee of the towing vehicle or by a person, firm, or corporation which is affiliated with the owner, or lessee of the towing vehicle” and marked "not for public hire” are exempt from the licensing requirement.
The police department regulations require unrestricted licensees to maintain 24-hour a day tow service, a police radio, facilities for body and collision work, as well as be open for the reclamation of cars at specific hours. Restricted licensees may not solicit at accident scenes nor have a police radio, but must maintain off-street parking facilities for towed vehicles. Both types of licensees are limited to charging $10 for the first mile and $1.50 for each additional mile of towing within the city, and must comply with many other restrictions as to drivers’ licenses, work done, and records kept for police department inspection.
In addition, those with unrestricted licenses must paint their cars chrome yellow with medium blue trim, and those with restricted licenses are prohibited from painting their cars yellow or any combination of yellow and blue. The individual petitioners herein all have licenses for which they have paid $100 ($50 per year per truck for two years). A moratorium was placed on the issuance of new unrestricted licenses by the police commissioner on March 22, 1976 at the request of the Mayor.
In addition to being the only tow cars permitted to tow cars disabled in accidents, towing car operators who have an *1068 unrestricted license are eligible for the award by the Transportation Commissioner of the City of New York of a permit to exclusively service and tow disabled vehicles on specified sections of roadways enumerated in section 79 of the Transportation Department of the City of New York’s rules and regulations. Among the 50 enumerated roadways are all parkways and expressways and bridges within the City of New York. No tow truck other than the franchisee may use any of these enumerated roadways.
Petitioners are challenging the entire licensing scheme including the dual types of licenses (and attendant privileges), rate setting, and especially the apparent sufferance, if not authorization, of the operation of unlicensed tow cars within New York City. Particularly objected to by the licensed tow car operators is the award to City Towing, Inc., an unlicensed tower, of a city contract in May of 1976 for the towing of illegally parked cars from the area of midtown Manhattan. Under this contract, City Towing, Inc., is permitted to charge $30 per car for each tow. In regard to this contract, petitioners claim, among other things, that City Towing, Inc., did not satisfy the requisite specifications for the award of the contract.
Petitioners suggest that the franchises awarded by the Department of Traffic to certain car operators, possessing unrestricted licenses, have not been fairly awarded, and that the monopolies created thereby have deprived other licensed tow car operators of the effective use of enumerated parkways, expressways and bridges. It is also suggested that to obtain access to these byways licensed tow car operators are forced to make payments to these franchised operators in order to pass through the area encompassed by their respective franchises. In this vein, petitioners additionally complain that the respondents’ refusal to afford reciprocity to tow car operators licensed without the city, subjects motorists, whose vehicles are being towed into the city, to multiple towing fees.
Petitioners argue that the respondents have provided patently insufficient manpower for the enforcement of their own regulations and as a consequence unscrupulous tow car operators are functioning with impunity to the conspicuous detriment of law abiding tow car operators. It is further claimed by the petitioners that while licensed tow car businesses operated by individuals and partnerships have been precluded from selling their businesses, tow car businesses operated by corpo *1069 rations have been able to transfer 100% of their corporate stock.
Section 436-7.0 of the Administrative Code was adopted by the New York City Council, pursuant to section 1642 of the Vehicle and Traffic Law. The power of the governing body to restrict or prohibit the use of public streets for commercial gain has long been recognized by our courts. (See People v La Frantz, 188 Misc 989, app dsmd without opn 302 NY 699.) Legislation must be upheld by the courts if it has a rational basis and if it is not unreasonable, arbitrary or capricious. (United States v Carolene Prods. Co., 304 US 144, 152; Nebbia v New York, 291 US 502, 525.) "The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense.” (Williams v Mayor, 289 US 36, 42.) While the presumption that legislation is constitutional is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540-541). The law must be necessarily related to some manifest end. (Nebbia v New York, supra.)
Petitioners do not quarrel with the legislative findings of subdivision a of section 436.7-0 of the Administrative Code that: "the rates and charges imposed for the towing of disabled motor vehicles in the streets of the city and for the repairs to such vehicles after having been towed from the place of disablement or accident is a matter affecting the public interest and consequently should be subject to supervision and administrative control, for the purpose of safeguarding the public against fraud, exorbitant rates and similar abuses.”
Nor is the rational basis test by which legislation and regulation must be judged (People v La Frantz, supra; Nebbia v New York, supra) in any sense contraverted by the petitioners. What is of course disputed is whether the regulatory scheme at issue constitutes a reasonable mechanism for supervising and administering this admittedly complex and important industry.
Generally, the licensing scheme set out in the Administrative Code and implemented by the police department regulations appears reasonably related to the objective of protecting the public in their business dealings with the tow car industry. The two types of towing car licenses as defined involve different rights and responsibilities; while both operate for *1070 public hire, unrestricted licensees are the only ones permitted to solicit at the scene of an accident; restricted licensees can perform any other towing service for the public. The exemption from the licensing requirements of tow cars which are not available for public hire is consistent with the legislative findings set forth in subdivision a of section 436-7.0 of the Administrative Code (see Williamson v Lee Opt. Co., 348 US 483). The establishment of a rate structure for licensed towers is integral and necessary to the protection of the public and has not been shown to be without foundation. (See Matter of Freidus v Leary, 66 Misc 2d 70, revd on other grounds 38 AD2d 919.)
The color scheme challenged by petitioners is clearly related to assisting the public as well as the police force in identifying which tow cars are authorized to solicit at the scene of a disablement. (See Williamson v Lee Opt. Co., supra; Matter of Fiorenti v Leary, 28 AD2d 702, affd 21 NY2d 668.)
The classifications, requirements and exemptions are rationally related to the stated governmental purpose. (See Massachusetts Bd. of Retirement v Murgia, 427 US 307; Hempstead T-W Corp. v Town of Hempstead, 13 Misc 2d 1054, affd 7 AD2d 637.) That some unlicensed tow cars operate illegally within the city cannot be used to invalidate the entire licensing system, for legislation need not achieve perfection before it is upheld. (See Massachusetts Bd. of Retirement v Murgia, supra; Williamson v Lee Opt. Co., supra.)
To the extent that petitioners’ objection to the existence of both licensed and unlicensed tow cars and the rate structure imposed on licensed cars within the city centers upon the award of a contract for the towing of illegally parked cars from the midtown area to a company with unlicensed tow cars, those objections do not spell out illegality. Under the contract, City Towing, Inc., can charge $30 per tow. The contract was awarded after notices in compliance with section 103 of the General Municipal Law were published in the City Record, and sent to all licensed tow car operators in New York City. The specifications required the contractor to maintain a specified number of trucks having specified dimensions, operate during designated hours in a designated area, maintain specified equipment and maintain a storage and reclamation area in a specified location during specified hours. As noted by respondents, the City Towing, Inc., is not within the purview of the licensing requirements of section 436-7.0 of the *1071 Administrative Code because they are not available for public hire and operates as an agent of the New York City Police Department. The difference in charges allowed to one towing on behalf of the Police Commissioner and a commercial tower was upheld in Matter of Freidus v Leary (66 Misc 2d 70, revd on other grounds 38 AD2d 919, supra).
Petitioners’ claim that licensees are unduly burdened by being subject to police department regulations and administrative hearings for violations thereof, in addition to being subject to Criminal Court appearances for violations relating to the operations of their tow cars is also without merit. Each forum serves a different function and they cannot be mutually exclusive. (See People v Parker, 91 Misc 2d 363.) Similarly, petitioners’ objection to a moratorium ordered by the commissioner on the issuance of new unrestricted licenses is without legal basis. The authority to issue a license does not confer a vested or absolute right thereto, but only a personal privilege to be exercised under restrictions existing at the time of the issuance of the license and such as may thereafter be reasonably imposed. (People ex rel. Lodes v Department of Health of City of N. Y., 189 NY 187.)
A license is not a commodity that can be bought and sold at will. (Hempstead T-W Corp. v Town of Hempstead, 13 Misc 2d 1054, affd 7 AD2d 637, supra.) Nontransferability of licenses was upheld in the Hempstead case. Licensing provisions are, in part, intended to identify accurately the agency responsible for the control and the operation of each tow car. (See Matter of Pruzan v Valentine, 282 NY 498.) And the moratorium on new licenses issued only as to one type of license to be effective while new legislation is drafted to alleviate industry abuses under the current licensing system is a valid exercise of the executive power.
Petitioners’ challenge to the transportation department’s granting of exclusive franchises must also be rejected. Section 1642 (subd [a], pars 15, 20) of the Vehicle and Traffic Law vests the city with authority to adopt legislation relating to traffic controls. Section 2603 (subd b, par [1]) of the New York City Charter authorizes the Commissioner of Transportation to adopt rules and regulations concerning vehicular traffic within the city. Sections 79 and 154 of the rules and regulations of the Transportation Department of the City of New York provide for the granting of exclusive franchises by the department on 50 enumerated roadways, parkways, express *1072 ways and bridges for towing, and pursuant thereto, the commissioner has established procedures for the granting of such permits to holders of unrestricted licenses. Procedures have been set up for the evaluation of the requirements for servicing a particular roadway, the sending of notices to tow car operators who have permit applications on file with the department, and who are geographically close to the roadway in question, and to other companies selected from the yellow pages of the telephone book, and the inspection of the facilities of each applicant before a selection is made.
Permitees must meet certain requirements as to 24-hour a day operation, specific hours of patrol, and offer efficient service and are subject to periodic review by the department, after which their permits may be rescinded. The Transportation Commissioner intended to provide adequate road service as quickly as possible so as to reduce delay and congestion on the heavily traveled arteries of the city.
The regulations providing for exclusive franchises are reasonably related to the interest of the commissioner in keeping the flow of traffic as free as possible. In People v La Frantz (188 Misc 989, 994, app dsmd without opn 320 NY 699, supra) the court rejected a challenge to the Park Commissioner’s then authority to issue exclusive permits and stated: "In our opinion, the Park Commissioner could himself furnish towing service and at the same time exclude others from the use of the parkway for that purpose without violating section 54 of the Vehicle and Traffic Law. Should that be so, it follows that he could delegate that service to be perfomed by others.” The Department of Transportation and its commissioner have therefore acted within its legal discretion in establishing the franchise system.
The suggestion by the petitioners that the respondents have in some sense sanctioned high speed races through the streets of the city by tow car operators attempting to beat competition to accident scenes and thereby secure tows is not established. The respondents deny that they have either explicitly or implicitly sanctioned any violations of either law or regulations and petitioners have failed to demonstrate that such is not the case. Nor have petitioners demonstrated that law enforcement authorities have failed to enforce both legal and administrative mandates controlling the tow car industry in the city.
Although the court concludes that the petitioners have *1073 failed to demonstrate grounds warranting invalidation of the over-all regulatory scheme of the tow car industry in this city, it is clear that the industry is one plagued by irregularities and abuses. Many of these problems no doubt arise from the failure of certain tow car operators to adhere to existing regulations. Others arise from inadequacies and inequities of existing regulations. It is not for the court, however, to undertake a general evaluation and upgrade existing regulations. Such an undertaking is essentially the province of the executive and legislative branches.
In this regard respondents’ answer notes that in 1975 and 1976 the office of the Mayor conducted an investigation of the emergency towing procedures within the City of New York. In February, 1976, the Mayor’s committee issued a report which proposed extensive revisions in the manner in which emergency towing operations were regulated. The Mayor’s committee also recommended that pending the adoption of legislation which would implement the proposed revisions a moratorium be imposed upon the issuance of unrestricted towing car licenses, and as previously noted such a moratorium is presently in effect and is supported by law. Hopefully the new legislation will be pursued with vigor and implemented in the near future.
The court, however, perceives no basis for a restriction upon the transfer (as opposed to the issuance of new licenses) of existing tow car licenses, assuming the party to whom the license is to be transferred meets the existing criteria for such license. Certainly, there is no basis to discriminate between the transfer of such licenses on the part of an individual or partnership holders on the one hand, and on the part of corporate holders on the other. To the extent respondents may have either engaged in such restrictions on the transfer of existing licenses or in determination between the right of individual and partnership holders of such licenses and the right of corporate holders of such licenses to transfer same, such restrictions and discrimination is hereby enjoined. Petitioners’ application is to that extent granted and in all other respects denied.