OPINION OF THE COURT
William D. Friedmann, J.
Defendant seeks to suppress an automobile which was being towed by a tow truck operated by him prior to his arrest (CPL 710.20, subd 1).
Defendant contends that the stop of his tow truck by the arresting officers constituted unreasonable police conduct which violated his Fourth Amendment rights.
The People resist suppression, urging a finding of “reasonable suspicion” on the part of the arresting officer. In *854 the alternative, the People urge that the State’s interest in the proper enforcement of the pervasive regulations governing and/or agreed to by those engaged in the tow truck industry, supersedes the minimal intrusion occasioned by a document check. That, therefore, the stop of defendant is not unreasonable under the Fourth Amendment.
RELEVANT FACTS
The court finds the facts surrounding the tow truck stop to be uncontested.
On August 25, 1980, at approximately 12:10 p.m., the defendant, Regulado Velez, was operating his tow truck (with an automobile in tow) in the vicinity of East Ford-ham Road and Jerome Avenue, Bronx, New York. Police Officer A. Calise and his fellow officer, both in civilian clothes, were on patrol in an unmarked vehicle. They observed defendant, and followed him for approximately one block. Officer Calise observed nothing peculiar about defendant. According to his observations, defendant was not violating any law. Officer Calise did, however, note that the automobile being towed by defendant had no visible damage to it. Officer Calise testified at the suppression hearing conducted by the court that he knew that this towing was taking place in a location which had experienced numerous car thefts.
The officer’s observations and knowledge of car theft statistics, together with his awareness of his authority, and responsibility, as a member of the New York City Police Department in enforcing the local law and regulations governing the tow truck business, caused Officer Calise to approach defendant’s tow truck when it was stopped at a traffic light. The officer identified himself and told defendant to pull over. Defendant’s documents, including his “towing car license”, “tow car driver’s license” and “towing authorization form”, for the automobile being towed, were requested. The defendant failed to produce the documentation, whereupon Officer Calise made additional observations concerning the tow truck and caused certain verification checks to be made. These checks resulted in defendant being charged with a violation of sections 170.65 (forgery of a vehicle identification number), 155.30 (grand *855 larceny) and 165.45 (criminal possession of stolen property in the second degree) of the Penal Law. The charge of section 170.65 was later dismissed, and the remaining charges were reduced to misdemeanor level.
The poststop observations, and the officer’s verification checks, are not a relevant subject of this motion, except as their results are affected by the “stop”, which defendant contends constituted an illegal intrusion upon his freedom of movement.
INQUIRY OF MOTION
The issue for determination is whether the stop of the defendant’s tow truck with its vehicle in tow, for an administrative inspection by the police, met the reasonableness requirement of the Fourth Amendment.
The Fourth Amendment will be satisfied if either of the People’s contentions are found to be valid.
The initial inquiry by this court is whether the “stop” of defendant’s tow truck was justified by the arresting officer’s observations, amounting to a sufficient “reasonable suspicion”, so as to satisfy the requirements, as set forth in People v Ingle (36 NY2d 413). (See, also, Delaware v Prouse, 440 US 648.)
The second inquiry will concern whether the authority delegated to the New York City Police Department under section 436-7.0 of the Administrative Code of the City of New York justified the “stop” as an administrative inspection, thereby vitiating the need to obtain a search warrant, in order to satisfy Fourth Amendment requirements.
FOURTH AMENDMENT CONSIDERATIONS RELATING TO AUTO STOPS
The Fourth Amendment of the United States Constitution guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures”.
The heart and soul of the Fourth Amendment’s proscription against unlawful searches and seizures is the standard of “reasonableness”. It is by this yardstick that our society strikes a balance between the State’s interest in effective law enforcement and the citizen’s right to be free from *856 unjustifiable and arbitrary governmental interference with his personal freedom. (Terry v Ohio, 392 US 1; People v Cantor, 36 NY2d 106; People v Chestnut, 51 NY2d 14.)
The propriety of an automobile “stop” for a “routine traffic check” has been held to be a “seizure”, within the constitutional limitations of the Fourth Amendment. (See People v Ingle, supra; Delaware v Prouse, supra.)
In Ingle (supra, p 415), the New York Court of Appeals concluded, after a thorough analysis of auto “stops” under Fourth Amendment considerations, that an arbitrary stop of a single automobile for a purportedly “routine traffic check” is impermissible unless the stopping police officer reasonably suspects a violation of the Vehicle and Traffic Law or that the stop is being conducted “according to nonarbitrary, nondiscriminatory, uniform procedures for detecting violations.” (Roadblocks, checkpoint, weighing stations and the like.)
Ingle (supra, pp 415, 420) in clarification of its principal holding states:
“It should be emphasized that, in the context of a motor vehicle inspection ‘stop’, the degree of suspicion required to justify the stop is minimal. Nothing like probable cause as that term is used in the criminal law is required ***
“It should be emphasized that the factual basis required to support a stop for a ‘routine traffic check’ is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable *** All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.’ (Terry v Ohio, 392 US 1, 21, supra).”
Applying Ingle principles herein places the stop of defendant’s tow truck in jeopardy. To justify an initial intrusion upon defendant’s freedom of movement, Ingle (supra) holds that the “stop” must be supported by at least a minimal factual basis, and must not be the product of mere whim, caprice or idle curiosity on the part of the police officer.
By this standard, little or no significance can be attached to Officer Calise’s prestop observations and testimony that *857 there was nothing peculiar about the defendant and/or that he observed defendant doing nothing in violation of the law. Further, that his attention was drawn to defendant by the mere fact that the tow truck was towing an automobile with no visible damage to it, in a high crime area, at 12:10 p.m. (see People v Jones, NYLJ, May 18, 1981, p 13, col 3, citing People v Corrado, 22 NY2d 308; cf. People v McRay, 51 NY2d 594). The limited factors urged in supporting the “stop” of defendant’s tow truck seem to this court to be more the product of what later proved to have been a correct hunch, lucky guess, or the educated curiosity of Officer Calise rather than being supported by even the minimal factual basis required by Ingle (supra) to support a “stop” for even a “routine traffic check”.
The observation of “no visible damage” to the towed automobile supports many rational inferences other than that the vehicle in question had been the subject of a car theft. (Administrative Code, §436-7.0, subd b, par 4 [licensing and regulation of towing cars], defines a towed vehicle as, “‘Disabled Vehicle’ shall mean any vehicle that requires towing because of accident, or because it is unable to proceed under its own motive power.”)
The fact that the towing took place in a high crime area, at 12:10 p.m., can give rise to only the slightest suspicion of criminality. (People v Jones, supra.)
These limited factors, when considered together with the rational inferences to be drawn therefrom, would place the “stop” of defendant’s tow truck in peril when measured by Ingle (36 NY2d 413, supra). Further, the stop cannot be considered to be the product of a “non-arbitrary, systematic procedure to verify compliance with law”, which Ingle deems permissible through the use of nonarbitrary uniform and systematic inspection procedures.
The court’s first inquiry must therefore conclude, based on the limited observations of the arresting officer, even in light of his awareness of numerous incidents of auto theft in a particular location, that the “stop” of defendant’s tow truck did not result from a “reasonable suspicion” on the part of the arresting officer.
*858 FOURTH AMENDMENT CONSIDERATIONS — WARRANTLESS ADMINISTRATIVE INSPECTIONS
The stopping of a tow truck, with or without a vehicle in tow, in New York City, by the police department, in order to conduct a document check, seems to this court to constitute a specialized administrative inspection, distinguishable from the landmark automobile stop/Fourth Amendment cases. (See People v Ingle, supra; Delaware v Prouse, 440 US 648, supra.)
However, such a “stop” must still satisfy Fourth Amendment requirements, as they pertain to administrative inspections, as such a “stop” is still a limited seizure within the meaning of constitutional limitations.
The United States Supreme. Court in interpreting the Fourth Amendment (in cases too numerous to require citation) has held that a search and seizure of private property, without proper consent, except in carefully defined classes of cases, is unreasonable unless it has been authorized by a valid search warrant.
This constitutional protection was extended to cover administrative inspections of housing premises in Camara v Municipal Ct. (387 US 523), and to administrative inspections of business premises in See v City of Seattle (387 US 541, 543) with the court stating: “The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant.”
Following Camara (supra) and See (supra) the United States Supreme Court by subsequent decisions has carved out two areas of reasonableness from its general test, which has required a search warrant in administrative inspections:
(1) Where the premises involves a “closely regulated industry” “long subject to close supervision and inspection” (Colonnade Corp. v United States, 397 US 72, 74, 77 [liquor industry]); and
*859 (2) Where the premises involve a “pervasively regulated business” (United States v Biswell, 406 US 311, 316 [firearms]).
Therefore, it would seem that an administrative inspection of a business premises, without a valid search warrant, would not be considered reasonable, and constitutional, under the Fourth Amendment, unless the search and seizure represents “responses to relatively unique circumstances”. (Marshall v Barlows, Inc., 436 US 307, 313.)
Based upon a review of the relevant Federal and State decisions concerning searches and seizures which were considered reasonable without the requirement of a search warrant, we find that they can be grouped into the following general categories:
(1) Businesses which have continuously been subject to close regulation and supervision or which are pervasively regulated. (Colonnade Corp. v United States, supra; United States v Biswell, supra; Marshall v Barlows, Inc., supra.)
(2) Presence of exigent circumstances (Camara v Municipal Ct., 387 US 523, supra); or
(3) Proper consent to the inspection, without a warrant, has been expressly or impliedly given by the occupant or owner of the premises. (Camara v Municipal Ct., supra; See v City of Seattle, 387 US 541, supra.)
To ascertain whether the tow truck industry falls within any of these exceptions to the warrant requirement, it will be necessary to look at the nature and history of governmental intervention in that industry.
REGULATION OF TOW TRUCKS
The vehicle towing business has long been subject to close regulation and supervision. The courts in most reported cases have upheld various statutes and ordinances which concern the regulation of almost every aspect of the business of operating tow trucks for public hire. By both express legislative authority, or by the exercise of police power to prevent street accidents, traffic congestion, forced repair obligations, excessive profits from exorbitant rates and other improper practices, governmental entities, such *860 as municipalities have been permitted by the courts to regulate and control the business of towing vehicles on their streets and highways. The fact that vehicle towing is pervasively and thoroughly regulated can be easily ascertained from controlled practices which have been upheld by the courts, upon challenge (exclusive franchise zones, classification of licenses, adequacy of facilities and equipment, hours of operation, prohibition of operation on certain roads, required authorizations, storage of vehicles, solicitation, fees, etc.). (See Regulation of Vehicle Towing Business, Ann., 97 ALR3d 495; Regulation of Vehicle Wrecker or Towing Service Business, Ann., 42 ALR2d 1208, and the numerous cases cited therein.)
The validity of the over-all licensing and regulatory scheme of the tow truck industry in New York City (see Administrative Code, § 436-7.0, and Tow Car Regulations, promulgated thereunder by Police Commissioner of City of NY) was upheld as being reasonably related to the objective of protecting the public in their business dealings with the tow car industry in Matter of Love Towing v Beame (93 Misc 2d 1064). (And see Matter of Bay Towing v Broderick, 49 Misc 2d 657 [where it was held that the City Council of the City of New York had properly delegated to the police commissioner its authority to regulate the licensing of tow vehicles]; Administrative Code, § 436-7.0, subd r.)
Even a cursory review of section 436-7.0 and the Tow Car Regulations promulgated thereunder (New Tow Regulations, eff Jan. 1, 1976) will reveal that tow car drivers, tow trucks and tow businesses are regulated from A to Z in New York City under the direct enforcement and supervision of the police department.
Section 436-7.0 empowers the police commissioner to license and regulate the towing of cars. Subdivisions j and r of section 436-7.0 read, in part, as follows:
“j. Removal of Vehicles. — Except as provided in subdivision q of this section [removal of vehicles obstructing traffic], a towing car driver shall not remove a motor vehicle involved in an accident without an authorization signed by the owner of the vehicle or other person in charge, on a form prescribed by the commissioner ***
*861 “r. Rules. — The commissioner shall have power to promulgate and prescribe rules and regulations for the proper and efficient administration and enforcement of this section.”
Pursuant to subdivision r of section 436-7.0, on January 11,1976, the current tow car regulations became effective. Under 10 general subdivisions all aspects of the towing industry are carefully regulated. Certain portions are highlighted below:
“1(F) Prescribes minimum size and facilities required for the issuance of unrestricted licenses.
“11(A) Restricts operators to those with a current towing car driver’s license.
“11(B) Restricts owners to those with either an Unrestricted (B-l) or a Restricted (B-2) license and the requirements for each.
“HI Requires the keeping of a log book, which shall be readily available for inspection by members of the Police Department.
“IV Prescribes the exact forms to be used. IV-C states that the forms ‘shall be exhibited upon demand of a member of the Police Department’ * * *
“V Regulates charges.
“VI Sets forth the requirements individuals must meet to obtain licenses.
“VII A Regulates physical requirements of tow trucks.
“B Regulates requirements of towing car owners.
“B(g) An owner shall: Permit a police officer to inspect any of the locations where his business is conducted at any time that any person is on the premises.
“C Regulates Towing Car Drivers. C-l-(g) A licensed towing car driver shall: Give his name and identification upon request of any person.
“VIII Denotes the responsibilities of the owner and operator of a towing service.
“IX Provides for removal of vehicles from highways.
“X General Provisions.
*862 “(A) Licensees shall cooperate with all police officers in the performance of their duty. * **
“(F) Licensees shall be required to produce and surrender upon demand all records required by any member of the Police Department conducting an investigation. ***
“(H) The Commissioner may take cognizance of any act, conduct or omission by those to whom these regulations are applicable, which is * * * detrimental to the best interests of the public * * * and may as a result suspend or revoke the license.”
The afore-mentioned regulations apply to a relatively small class of businessmen doing towing within the City of New York. The license division of the New York City Police Department reports that, city-wide, there are currently 1,415 medallioned tow trucks, 2,531 tow truck drivers with the required police identification cards, and 599 licensed towing businesses.
CONCLUSIONS
Applying the three generally recognized standards of reasonableness (1. business that has been long and closely regulated; 2. presence of exigent circumstances; 3. consent by advance knowledge and submission) to the “stop” and “seizure” being considered by this court (any one of which would be supportive of the “stop” and inspection in question), it is the opinion of this court that the tow truck business in New York City qualifies under all three general categories of exception or “reasonableness” under the Fourth Amendment.
Firstly, the court finds that the tow truck industry, as previously discussed, is a closely regulated industry — “long subject to close supervision and inspection”.
While the United States Supreme Court has limited its approval of warrantless inspections to liquor and firearm sales, lower courts have carved numerous exceptions allowing warrantless searches of pharmacies (People v Terraciano, 39 AD2d 1005; Hosto v Brickell, 265 Ark 147), massage parlors (Pollard v Cockrell, 578 F2d 1002; United Health Clubs of Amer. v Strom, 423 F Supp 761; City of Indianapolis v Wright, 267 Ind 471), food processors (State v Westside Fish Co., 31 Ore App 299), nursing homes *863 (People v Firstenberg, 92 Cal App 3d 570; Uzzillia v Commissioner of Health of State of N. Y., 47 AD2d 492), hunting (State v Halverson, _ SD _, 277 NW2d 723 [SD]), commercial fishing (State v Mach, 23 Wash App 113). In all such decisions, the pervasiveness of the regulations which control the industry in question was the major factor in the court’s determination.
Secondly, the court finds that a crucial part of the regulatory scheme of tow trucks, if it is to be effective, is that such regulation be carried out under exigent circumstances, when the towing vehicle is in operation (authorized [1 j driver [2] towing vehicle and [3] subject of the tow), therefore, there exists a compelling urgency to inspect tow trucks and their vehicles in tow while they are in motion or in an operational setting.
As set forth in Camara v Municipal Ct. (387 US 523, supra), when assessing whether the public interest demands creation of a general exception to the Fourth Amendment’s warrant requirement, the question is not whether the public interest justifies the search, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search. On this basis, courts have allowed the random stopping of automobiles near border areas to check for the presence of illegal aliens (see Almeida-Sanchez v United States, 413 US 266). Courts have also allowed the random check of automobiles in fishing and hunting areas, so as to prevent illegally obtained catches. (State v Mach, supra; State v Halverson, supra.) As illustrated by the afore-mentioned cases, the time necessary to obtain a search warrant would have made the need for the warrant moot, as the object of the search would be long out of the jurisdiction upon the obtaining and utilization of a search warrant. The case of a towing vehicle in motion presents the same considerations. The illegal towing of cars (or the potential of same, as inherent in the mechanical nature of a towing vehicle) amounts to little more than “urban poaching”, and should be accorded the same regulating procedures as its rural relation. Time is of the essence, and as such, the relatively *864 small inconvenience of the “stop” must be sanctioned if enforcement of the regulations is to be had, especially when the inherent capabilities of a tow truck vehicle is considered.
Thirdly, the court finds that consent to a police or administrative “stop” and inspection is “implied”, because a person engaged in tow trucking in New York City has knowingly elected to submit himself, on a continuing basis, to licensing and regulation, and therefore consents to reasonable administrative inspections.
-Subdivision (F) of article X of the regulations governing towing cars, towing car owners, reads in part as follows: “Licensees shall be required to produce and surrender upon demand all records required by any member of the Police Department conducting an investigation.”
In the context of a regulatory inspection system of business premises that is carefully limited in time, place and scope, the legality of the search depends not on actual consent, but on the authority of a valid statute. (United States v Biswell, 406 US 311, supra.) The regulatory scheme of the towing industry in New York City was reviewed and upheld in 1978 in Matter of Love Towing v Beame (93 Misc 2d 1064, supra). Thus when a person “chooses to engage in [a] pervasively regulated business”, such as towing, he “does so with the knowledge that his business *** will be subject to effective inspection” (United States v Biswell, supra, p 316), and his consent to warrantless searches may be implied.
In Sokolov v Village of Freeport (52 NY2d 341), the New York Court of Appeals, in a decision dated March 31,1981, held that the business of residential rental is of such a nature that consent to a warrantless administrative search may not be implied from the choice of the appellant to engage in that business. However, the court goes on to indicate approval of prompt inspections in true emergency situations. This court is of the opinion that the tow truck industry is of such a nature that consent can be implied. Towing is more akin to an “emergency situation” than a residence which has a fixed locus as in Sokolov. Violations of the housing code are not easily hidden, and therefore the *865 requirement of a warrant is not unreasonable. However, due to the transitory nature of the towing industry, we see that time is of the essence and immediate action, often in the field, is necessary if regulation is to be effective.
Although this court makes a determination that the tow truck business in New York City is a pervasively regulated business — and that the “stop” of a towing vehicle for a document or equipment inspection is justified by the New York City Police Department, under section 436-7.0 of the Administrative Code the court finds that the following requirements must also be observed in order to justify a tow truck “stop” and document inspection.
1. The “stop” and “inspection” must be expeditiously conducted, posing only a minimal intrusion upon the justifiable expectation of privacy of the very limited and defined class of persons and businesses who have knowingly elected to and/or are engaged in this highly regulated activity. (Tow trucking.)
2. The warrantless stop and inspection must continue to be a crucial part of a regulatory scheme designed to protect the public in their business dealings with the tow truck industry and those who elect to engage in it.
3. The stop and inspection must be limited to the activity of towing vehicles and their operations which take place away from an operational base or fixed place of business, if any. It being the view of the court that when fixed operational circumstances are present (garage — repair shop, etc.) and absent the element of actual consent or the existence of exigent circumstances, that the securing of a search warrant is not only practical but also desirable (see Matter of Glenwood TV, NYLJ, June 9, 1981, p 12, col 3).
Inasmuch as the tow truck “stop” is considered reasonable under the Fourth Amendment, as authorized by section 436-7.0 of the Administrative Code, the motion to suppress the towed automobile is denied.