OPINION OF THE COURT
Julius Vinik, J.
The central issue in this case: Is a dealer in used cars or an operator of a body repair shop engaged in a “pervasively regulated” business authorizing a warrantless (administrative) search by the police?
Defendant moves to suppress (a) his statements to Police Officer Richard Arroyo, and (b) the physical evidence seized without a warrant from his business premises on March 23,1983 and the physical evidence seized on March 25, 1983 pursuant to a search warrant issued that day.
*420 The court conducted a combined Huntley-Mapp hearing at which Police Officer Richard Arroyo, Janet Santos, Joseph Robles and Norman Turk testified.
From all of the credible testimony, the court makes the following findings of fact:
For the past 20 years defendant Joseph Robles, conducts a used car business and body repair shop as “Knights Collision and Auto Sales” at 120 Union Avenue, Brooklyn, New York. Defendant also participates in the New York City Rotation Tow Program.
Sometime in January, 1983, the New York City Police Department Auto Crimes Division received information from the Department of Motor Vehicles that “Knights” Auto Sales may have been involved in the sale of a vehicle with a possible altered vehicle identification number (VIN).
On March 23, 1983 (two months later) Police Officer Arroyo together with four other officers of the New York City Police Department Auto Crimes Division went to defendant’s premises. They entered through a glass doorway from the street into an office and identified themselves to Janet Santos, a secretary, and told her they were there for inspection. When they asked for “the boss” and requested books and records, she told them that she didn’t know where the books are located, “Mr. Robles handled that”. One officer remained with Miss Santos while the other four officers entered through a closed door into a foyer, and therefrom through a second and third closed door into the rear shop area. The rear shop area was accessible only through these closed doors, and were not open to public view. They inspected the shop area and observed a rack containing a 1978 Chrysler transmission VIN No. 8P144231 and 10 additional transmissions with VIN numbers removed.
Shortly thereafter defendant Robles appeared and was told by Janet that police officers were in the shop area. Upon entering the shop he asked the officers if they had a warrant and immediately told them that he wished to call his attorney. Two officers accompanied defendant from the shop area to his office located directly under the secretary’s office. Defendant spoke to his attorney and was told by the *421 attorney to give his name and address only. The attorney also spoke to the officers by phone and advised them to leave unless they had a search warrant. He instructed the officers not to question defendant except for pedigree. Returning to the shop area, the officers asked defendant why the transmissions were in the shop. He responded that they were for sale. To the further question, ‘where did they come from?”, defendant responded, “a lot of people come to sell us parts.” Defendant was arrested and the items seized.
On March 25, 1983, Police Officer Arroyo applied for a search warrant. His affidavit in support thereof recounted the incident of March 23,1983, involving the 11 transmissions which were seized and alleged further that (after checking with the National Auto Theft Bureau) the 1978 Chrysler transmission YIN No. 8P144231 was reported stolen on September 9, 1982 and wanted. The affidavit further stated that “Knights” is a licensed new and used car retailer dealer, a licensed secondhand dealer, licensed as a medallion tow and participates in the Rotation Tow Program of the New York City Police Department. The search warrant was issued and pursuant thereto a search of defendant’s premises was conducted on March 25, 1983 and various other transmissions, seats and auto doors were seized.
THE HUNTLEY ISSUE:
The right to counsel guaranteed by section 6 of article I of the New York State Constitution has been extended beyond those of the Fifth and Sixth Amendments. The Court of Appeals (People v Arthur, 22 NY2d 325, 329) made explicit New York’s constitutional guarantees of due process, the privilege against self incrimination and the right to counsel as follows: “Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney”.
The questioning of this defendant after counsel has entered and spoken to the police, and in the face of his (counsel’s) instruction not to question the defendant except as to pedigree, renders the defendant’s statements violative of his constitutional rights and is suppressed. (People v *422 Skinner, 52 NY2d 24.) The court further finds that the answers were given as a result of interrogation, and not spontaneous or pedigree.
THE MAPP ISSUE:
Was the warrantless search and seizure of property from defendant’s business premises on March 23, 1983 in violation of defendant’s rights under the Fourth Amendment?
The People concede that the warrantless search of defendant’s garage by reason of defendant’s participation in the New York City Police Department Rotation Tow Program was impermissible (People v Velez, 109 Misc 2d 853).
However, the People argue that since defendant is in the business of used car sales and auto repair shop, the police officers had the right to enter his business premises pursuant to the provisions of section 436 of the New York City Charter, and section B32-132.0 of the Administrative Code of the City of New York for the purpose of examining records of purchases and sales. That these statutes have been held to be within well-established exceptions to the warrant requirements, since dealers in used goods and junkyards are engaged in pervasively regulated industries. In support of this position the People cite the following cases which permitted warrantless inspections and searches in certain designated industries (People v Ruggieri, 85 Misc 2d 141, junkyard; People v Tinneny, 99 Misc 2d 962, auto salvage; People v Pace, 111 Misc 2d 488, revd on other grounds 101 AD2d 336, auto wrecking and salvage; People v Garcia, 111 Misc 2d 550, dismantled).
The People also argue that secondhand auto dealers are engaged in a pervasively regulated business because the auto industry has been extensively regulated since 1901, requiring registration of vehicles, manufacturers, dealers, repairmen and others.
Additionally, the People contend that the recent amendment to section 415-a of the Vehicle and Traffic Law authorized the police to carry out warrantless inspections of businesses of the type defendant conducted in order to curb thefts of automobiles and to decrease costs to insurance companies and the public (NY Legis Ann, 1979, pp 416-417).
*423 CONCLUSIONS OF LAW
Unlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless searches of commercial property do not necessarily violate that amendment. The prohibition against unreasonable searches and seizures applies to administrative inspections of business and commercial properties (Sokolov v Village of Freeport, 52 NY2d 341). The businessmen like the occupant of a residence has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. (See v City of Seattle, 387 US 541.) However, where a person is engaged in a business which is the subject of a long-standing and pervasively regulated pattern of close supervision and inspection, he possesses a diminished expectation privacy. The Supreme Court of the United States in Colonnade Corp. v United States (397 US 72) and in United States v Biswell (406 US 311) affirmed the broad power of Congress to design such appropriate powers of inspection with respect to the liquor and firearms industries involving warrantless searches; and having recognized that those industries are closely regulated, held that inspections without warrants pursuant to regulations limited to time, place and scope are reasonable official conduct.
The rationale for allowing a greater latitude to conduct warrantless inspections of pervasively regulated businesses differs significantly from the sanctity accorded an individual’s home, and this privacy interest is adequately protected by regulatory schemes (limited in time, place and scope) authorizing such inspection (United States v Biswell, supra, at p 316). The import of Colonnade and Biswell (supra) is that although a warrant is not a condition precedent to a search of premises used for the conduct of a closely regulated business, “[njonetheless, persons engaged in those businesses remain entitled to protection of their limited expectation of privacy” (State v Williams, 84 NJ 217, 224).
It is within these authorities that we examine the statutes and the conduct of the police officers in this case.
*424 While it is undeniable that the distribution and sale of motor vehicles in this State vitally affects the general economy and the public interest and welfare of its citizens, we must first determine whether the used car and auto repair shop businesses incur such unique circumstances and governmental interest to authorize warrantless searches. In light of the special circumstances involved in Colonnade and Biswell, this court fails to perceive any mandate for control of the used car and auto repair industries to abolish social evils to the extent that are apparent in the auto dismantling (inroads of organized crime) or the towing businesses (People v Velez, supra) which are extensively regulated and enforcement of the regulations are delegated to the Police Commissioner.
Section 436 of the New York City Charter provides: “The commissioner shall possess powers of general supervision and inspection over all licensed or unlicensed pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, dealers in second-hand merchandise and auctioneers within the city; and in connection with the performance of any police duties he shall have power to examine such persons, their clerks and employees and their goods, business premises, and any articles of merchandise in their possession.”
Section B32-132.0 of the Administrative Code provides: “Record of purchase and sales. — a. Every dealer in secondhand articles shall keep a book in which shall be legibly written * * * a description of every article so purchased or sold”.
Used car dealers and auto body shops are not pawnbrokers, vendors, junkshop keepers, junk boatmen, cartmen, auctioneers or dealers in secondhand merchandise or secondhand articles, and are therefore not subject to the provisions of section 436 or section B32-132.0. This court declines to extend the meaning of secondhand merchandise (or articles) to dealers in motor vehicles (as opposed to merchandise) as urged by the People. Moreover, subdivision 5 of section 415-a of the Vehicle and Traffic Law (as amended) applies to those businesses specifically enumerated, i.e., vehicle dismantlers, salvage pool, mobile car crushers and itinerant vehicle collectors. Used car dealers and repair shop operators are separately covered under *425 sections 415 and 398-d of the Vehicle and Traffic Law which do not subject these businesses to the stringent record keeping and inspection requirements of section 415-a. Had the Legislature intended to include used car dealers and repair shops within the purview of section 415-a it could have expressly said so. It did not.
Moreover, it is readily apparent that all of the cases cited by the People (supra) deal with persons engaged in the junkyard, vehicle dismantling and towing business which have been held to be within Colonnade-Biswell exception. No case has been cited or brought to the attention of this court holding that the used car or auto repair shop businesses are, pervasively regulated.
This court concludes that neither the used car nor the repair shop businesses fall within the Colonnade-Biswell rationale as pervasively regulated industries permitting warrantless searches or seizures. This defendant had the right to go about his business free from unreasonable warrantless official entries on his private commercial property. The forcible warrantless entry by the police officers into defendant’s private business premises not in public view and not accessible to the public was unauthorized.
Assuming, arguendo, that the defendant’s business is to be deemed pervasively regulated, nevertheless, this court finds that the search of defendant’s premises cannot be justified (People v Pace, 101 AD2d 336, supra).
The five police officers entered defendant’s premises for the sole purpose of gathering evidence of criminality based upon some suspicion that defendant may have been involved in the sale of a vehicle with an altered VIN, rather than to administer any regulatory scheme. As our Appellate Division stated in People v Pace (supra, p 340):
“When a search is not undertaken as a routine regulatory inspection, the administrative search rationale is simply inapplicable * * * ‘once the sole purpose behind the search shifts from administrative compliance to a quest for evidence to be used in a criminal prosecution, the government may constitutionally enter the premises only upon securing a warrant supported by full probable cause’ * * *
*426 “Application of such a bright line rule is particularly appropriate when the police have been designated administrators [since police] ‘[s]earches * * * are inherently more intrusive than purely administrative inspections’.”
This court, however, does not rule that every time a police officer has knowledge of prior criminal activity on the part of a regulated business, that fact alone precludes legitimate administrative inspections. Each case must be examined on the basis of its particular fact pattern considering the totality of circumstances.
Furthermore, again assuming, arguendo, that defendant’s business is pervasively regulated, neither section 436 of the New York City Charter nor section B32-132.0 of the Administrative Code nor section 415-a of the Vehicle and Traffic Law would be applicable. While all of those sections require the businessman to keep a police book, no book was presented to the police when they came in, and it would thus have been impossible for the officers to exercise the authority to compare the book entries to the contents in the rear shop. (People v Pace, supra, p 339, n 1.)
We therefore have a situation where the police have illegally entered an enclosed premises, discovered contraband, seized it and then obtained a search warrant based on such illegal entry in an attempt to validate the seizure of the fruits of the illegal entry, and discovered additional contraband.
Evidence thus obtained pursuant to the warrant must also be suppressed (People v Soto, 96 AD2d 741).
Although it is unnecessary in this case to pass on the constitutionality of section 436 of the New York City Charter and section B32-132.0 of the Administrative Code, this court entertains serious doubts whether these statutes comply with the requirements of Colonnade-Biswell (supra). Colonnade-Biswell require that regulatory statutes which permit warrantless searches be limited in time, place and scope.
Defendant’s motion to suppress his statements, the physical evidence seized without a warrant from his business premises on March 23, 1983, as well as the physical evidence seized pursuant to the warrant on March 25,1983, is granted.